**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

THE INTERFAITH ALLIANCE, et al.,

*Plaintiffs*,

v.

DONALD TRUMP, et al.,

*Defendants*.

**Case No. 26-cv-1075**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

    I.    The Federal Advisory Committee Act ............................................................... 3

    II.    Religious Liberty Commission ......................................................................... 4

    III.    This Litigation.................................................................................................. 9

LEGAL STANDARDS ................................................................................................... 10

ARGUMENT.................................................................................................................... 11

    I.    Plaintiffs Are Likely to Succeed on the Merits.................................................. 11

        A.    The Religious Liberty Commission Has Failed to Comply with FACA's Transparency Requirements. ...................................................................................................... 11

        B.    The Religious Liberty Commission is Unfairly Imbalanced. ...................................... 13

    II.    Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm........................................ 17

    III.    Balance of Harm and Public Interest Favor Plaintiffs. ................................................ 19

    IV.    This Court Should Order Defendants to Release Required Materials and Enjoin Defendants from Publishing the Commission's Report to Preserve the Status Quo. ............... 20

CONCLUSION................................................................................................................... 21

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Able v. United States*,
44 F.3d 128 (2d. Cir. 1995).................................................................................... 11

*Alabama-Tombigbee Rivers Coal. v. Dep't of Interior*,
26 F.3d 1103 (11th Cir. 1994) ................................................................................ 21

*Am. Chem. Council, Inc. v. Nat'l Acad. of Sciences*,
No. 23-2113, 2024 WL 1141465 (D.D.C. Mar. 15, 2024) ................................... 18

*Am. First Legal Found. v. Cardona*,
630 F. Supp. 3d 170 (D.D.C. 2022) ...................................................................... 18

*Am. Oversight v. Dep't of State*,
414 F. Supp. 3d 182 (D.D.C. 2019) ...................................................................... 18

*Assoc. of Am. Physicians & Surgeons v. Clinton*,
997 F.2d 898 (D.C. Cir. 1993) ............................................................................... 20

*Cal. Forestry Ass'n v. U.S. Forest Serv.*,
102 F.3d 609 (D.C. Cir. 1996) ............................................................................... 21

*Carey v. Klutznick*,
637 F.2d 834 (2d Cir. 1980).................................................................................... 11

*Cargill, Inc. v. United States*,
173 F.3d 323 (5th Cir. 1999) .................................................................................. 20

*Ctr. for Pub. Integrity v. U.S. Dep't of Defense*,
411 F. Supp. 3d 5 (D.D.C. 2019) ..................................................................... 17, 18

*Cummock v. Gore*,
180 F.3d 282 (D.C. Cir. 1999) ................................................................................. 1

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
286 F. Supp. 3d 96 (D.D.C. 2017) .................................................................... 18, 20

*Env't Def. Fund, Inc. v. Wright*,
No., CV 25-12249-WGY, 2026 WL 183484 (D. Mass. Jan. 23, 2026) ............... 19

*Food Chem. News v. Dep't of Health & Hum. Servs.*,
    980 F.2d 1468 (D.C. Cir. 1992) ................................................................... 4, 12, 13

*Haitian Ctrs. Council, Inc. v. McNary*,
    969 F.2d 1326 (2d Cir. 1992) ............................................................................... 11

*Lynch v. City of N.Y.*,
    589 F.3d 94 (2d Cir. 2009) ................................................................................... 10

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018) ................................................................................... 11

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr*,
    496 F. Supp. 3d 116 (D.D.C. 2020) .............................................. 16, 17, 18, 19

*Nat. Res. Def. Council v. Dep't of Interior*,
    410 F. Supp. 3d 582 (S.D.N.Y. 2019)....................................................... *passim*

*Nat. Res. Def. Council v. Johnson*,
    488 F.3d 1002 (D.C. Cir. 2007) ......................................................................... 12

*Nat. Res. Def. Council v. Zinke*,
    2020 No. 18-cv-6903-AJN; 2020 WL 5766323 (2020)..................................... 12

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*,
    566 F. Supp. 1515 (D.D.C. 1983) ...................................................................... 16

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*,
    711 F.2d 1071 (D.C. Cir. 1983) ..................................................................... 3, 13

*Nat'l Ass'n of Consumer Advocs. v. Uejio*,
    521 F. Supp. 3d 130 (D. Mass. 2021) ............................................................ 3, 18

*Nat'l Inst. of Family & Life Advocs. v. James*,
    160 F.4th 360 (2d Cir. 2025) .............................................................................. 17

*Nw. Ecosystem All. v. Off. of U.S. Trade Rep.*,
    No. C99–1165R, 1999 WL 33526001 (W.D. Wash. Nov. 9, 1999).............. 16, 19

*Oneida Nation of N.Y. v. Cuomo*,
    645 F.3d 154 (2d Cir. 2011)................................................................................ 10

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*,
    769 F.3d 105 (2d Cir. 2014)................................................................................ 10

*Pub. Citizen v. U.S. Dep't of Just.*,
    491 U.S. 440 (1989).................................................................................. 3, 17

*Pub. Citizen v. Nat'l Advisory Comm. on the Peace Corps*
    703 F. Supp. 129 (D.D.C. 1989).................................................................... 19

*Sale v. Haitian Centers Council, Inc.*,
    509 U.S. 918 (1993).................................................................................... 11

*Union of Concerned Scientists v. Wheeler*,
    954 F.3d 11 (1st Cir. 2020) ............................................................. 3, 4, 15, 16

*W. Org. of Res. Councils v. Bernhardt*,
    No. CV 18-139-M-DWM, 2019 WL 3805125 (D. Mont. Aug. 13, 2019)...................... 21

*Wash. Legal Found. v. Am. Bar Ass'n Standing Comm. on the Fed. Judiciary*,
    648 F. Supp. 1353 (D.D.C. 1986) .................................................................... 4

*Wash. Post v. Dep't of Homeland Sec.*,
    459 F. Supp. 2d 61 (D.D.C. 2006) .................................................................. 18

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................... 10

## STATUTES

5 U.S.C. § 1004.............................................................................................. 3, 13

5 U.S.C. § 1009.............................................................................................. 4, 12

## FEDERAL REGISTER

Continuance of Certain Federal Advisory Committees, Exec. Order No. 14354, 90 Fed. Reg.
    48145 (Oct. 6, 2025) .................................................................................... 9

Establishment of the Religious Liberty Commission, Exec. Order No. 14291, 90 Fed. Reg. 19417
    (May 1, 2025)........................................................................................ *passim*

Meeting of the Religious Liberty Commission, 90 Fed. Reg. 22514 (May 28, 2025) ................... 8

Meeting of the Religious Liberty Commission, 90 Fed. Reg. 35934 (July 30, 2025).................... 8

Meeting of the Religious Liberty Commission, 90 Fed. Reg. 41124 (Aug. 22, 2025)................... 8

Meeting of the Religious Liberty Commission, 91 Fed. Reg. 725 (Jan. 8, 2026) ……………… 8

Meeting of the Religious Liberty Commission, 91 Fed. Reg. 16016 (Mar. 31, 2026).................. 8

## OTHER AUTHORITIES

*About*, Paula White Ministries, https://perma.cc/3BAT-JWAC ...................................................... 5

*Bishop Robert Barron*, Word on Fire, https://perma.cc/2A6Y-6VMS ........................................... 5

Carrie Prejean Boller (@CarriePrejean1), X (Mar. 4, 2026),
    https://perma.cc/P2Z7-QRMB .................................................................................... 14

Carrie Prejean Boller (@CarriePrejean1), X  (Mar. 20, 2026),
    https://perma.cc/6VRX-MRD5................................................................................... 14

Cissie Graham Lynch, *Q&A with Scott Turner: From the NFL to the White House*, Decision
    Mag. (May 1, 2025), https://perma.cc/XLJ6-NX5E .............................................................. 5

*Clergy & Professional Team*, Congregation Shearith Israel, https://perma.cc/8PBD-DEJV ......... 5

*Commissioners and Advisory Board Members*, U.S. Dep't of Just.,
    https://perma.cc/23HN-MVT5..................................................................................... 5

Dep't of Just., *First Hearing of the Religious Liberty Commission, Part 1* (YouTube, June 16,
    2025), https://www.youtube.com/watch?v=zsdFM-pNqc0................................................ 8

Dep't of Just., *Second Hearing of the Religious Liberty Commission, Part 1* (YouTube, Sept. 9,
    2025), https://www.youtube.com/watch?v=Dkk9wt9Tjw4; ........................................... 8

Dep't of Just., *Third Hearing of the Religious Liberty Commission, Part 2* (YouTube, Oct. 1,
    2025), https://www.youtube.com/watch?v=H4o2Q6PUKZs ........................................... 8

Dep't of Just., *Fourth Hearing of the Religious Liberty Commission, Part 1* (Youtube Jan. 21,
    2026), https://www.youtube.com/watch?v=LXwBA9xGGoE ........................................ 8

Dep't of Just., *Religious Liberty Commission, Sixth Hearing* (YouTube, Mar. 16, 2026),
    https://www.youtube.com/watch?v=MP2fFuYT3bM .................................................. 8, 9

Donald J. Trump, *Remarks to the White House Religious Liberty Commission*, Am. Presidency
    Project (Sept. 8, 2025), https://perma.cc/ZF8F-UX8X....................................................... 7

v

Elana Schor, *Secular Groups Decry Carson's Church and State Comment*, AP News (Oct. 22, 2019), https://perma.cc/H5RV-QGYR ............................................................. 7

Eric Metaxas (@Ericmetaxax), X (Feb. 21, 2025), https://perma.cc/EF37-R825 ………………… 7

*Faith in Action for Pam Bondi*, Fox 13 Tampa Bay (Feb. 8, 2025), https://perma.cc/GK7P-GVE5 ........................................................................................ 5

First Liberty Institute, *35 Years on the Frontlines of Faith  Kelly Shackelford's Story* (YouTube, June 24, 2024), https://www.youtube.com/watch?v=v3kKQYFd61k................................. 5

*Franciscan University Welcomes Catholic Scholar, Ryan T. Anderson, PhD, as Visiting Fellow at the Veritas Center for Ethics in Public Life*, Franciscan (Sept. 13, 2017), https://perma.cc/PGK9-EB7G ....................................................................................... 5

Franklin Graham, *Franklin Graham: We Stand on The Gospel*, Billy Graham Evangelistic Ass'n of Can. (Apr. 7, 2021), https://perma.cc/NQH8-HW79 ....................................................... 6

Gustav Niebuhr, *A Nation Challenged: The Evangelist; Muslim Group Seeks to Meet Billy Graham's Son*, N.Y. Times (Nov. 20, 2001), https://perma.cc/7PAT-SYLE .................... 7

*His Eminence, Cardinal Timothy Dolan*, Archdiocese of N.Y., https://perma.cc/VG7S-JDRF .... 5

H.R. Rep. No. 92-1017 (1972)............................................................................................. 3

Julie Asher, *Cardinal Dolan Says Senate's Marriage Bill Threatens Religious Liberty*, Cath. Rev. (Nov. 21, 2022), https://perma.cc/PTU8-3D9K .......................................................... 6

Katharine Wilson, *Texas Lt. Gov. Dan Patrick to Lead Trump's Commission on Religious Liberty*, Tex. Trib. (May 1, 2025), https://perma.cc/RZ2H-5ZX2 ..................................... 6

Martin Pengelly, *Ben Carson Says No Muslim Should Ever Become US President*, The Guardian (Sept. 20, 2015), https://perma.cc/43XZ-DGDJ ................................................................. 7

Meir Soloveichik, *A Nation Under God: Jew, Christians, and the American Public Square*, 14 Torah u-Madda J. 62 (2006), https://perma.cc/8UQW-YK3D .......................................... 6

Meir Y. Soloveichik, et al., *United We Stand for Religious Freedom,* Wall St. J. (Feb. 10, 2012), https://perma.cc/Q7R5-6U96 ...................................................................................... 6

Meredith McGraw, et al., *Vince Haley Is the Most Influential Trump Adviser You've Probably Never Heard Of*, Wall St. J. (Mar. 21, 2025), https://perma.cc/X56P-36AB ..................... 5

Minn. Cath. Conf., *Bishop Barron on Religious Freedom & Gender Ideology in Minnesota*, YouTube (May 6, 2024), https://www.youtube.com/watch?v=HDTG6M7H_-8 .............. 6

*Nationwide Anti-Mosque Activity*, ACLU, https://perma.cc/M3Q4-LU9C .................................. 16

Paula White (@paulamichellewhite), Instagram (Sept. 25, 2025), https://perma.cc/922M-QUFZ ........................................................................................ 6

*Presidential Religious Liberty Commission First Hearing Transcript*, Dep't of Just. (June 16, 2025), https://perma.cc/ZD6X-WVWK ............................................................................ 9

*Presidential Religious Liberty Commission Fourth Hearing Transcript*, Dep't of Just. (Dec. 10, 2025), https://perma.cc/FN2Y-J6DS ................................................................................ 9

Rachel Zoll, *Carson Opens Up About His Membership in Seventh-Day Adventist Church*, PBS News (Oct. 31, 2015), https://perma.cc/K7FA-7CG3 ...................................................... 5

Rob Mentzer, *Wisconsin's Sikh Community a Decade After Fatal Temple Shooting*, NPR (July 28, 2022), https://perma.cc/ATD2-PR4G ........................................................................ 16

*Supreme Court Agrees That Mississippi Man Should Have His Day in Court to Claim His First Amendment Rights,* First Liberty (Mar. 20, 2026), https://perma.cc/98DR-83UH............. 5

Sylvia St. Cyr, *Dr. Phil Shares Personal Testimony of Coming to Christ*, CHVNRadio (Mar. 19, 2024), https://perma.cc/5NL6-TH7M .................................................................................. 5

Troy Matthews, *Trump Faith Advisor: Placing LGBTQ Foster Youth in Safe Homes is 'Wickedness and Darkness'*, Meidas Touch News (June 21, 2024), https://perma.cc/TKK4-SHDB ………………………………………………………….. 6

*When Truth Became Personal: Eric Metaxas at Cornerstone University*, Cornerstone Univ. (Nov. 6, 2025), https://perma.cc/Y9VU-HPVD ...................................................................... 5

**INTRODUCTION**

Religious liberty and religious pluralism are two of America's most enduring founding ideals. Last year, when President Trump issued an executive order creating the Religious Liberty Commission, he tasked the Commission with, among other things, defending religious liberty for all Americans and celebrating America's proud tradition of peaceful religious pluralism. The Commission was also tasked with issuing a final report on these topics. However, these lofty ideals were swiftly disregarded and proved to be shambolic. President Trump and Attorney General Bondi—who is generally tasked with performing the functions of the President for the Commission—appointed to the Commission only extremist individuals who believe that America is, and should be, a "Judeo-Christian" nation, advocate for government-endorsed religion, and have a history of discriminating against disfavored groups. And despite the Commission's stated goal of celebrating religious diversity and religious pluralism, no member of the Commission represents a minority religion (other than one Orthodox Jewish member) and no member represents an interfaith perspective. On top of selecting a skewed and biased membership, the Commission has refused to release agendas, meeting minutes, transcripts, and other Commission materials.

Congress enacted the Federal Advisory Committee Act ("FACA") to check "the proliferation of costly [advisory] committees . . . dominated by . . . special interests seeking to advance their own agendas." *Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999). FACA creates meaningful limitations on whether and how new advisory committees are created by requiring committees to bring a balance of perspectives to the issues under consideration. Once established, FACA requires committees to ensure the public can meaningfully access committee proceedings and records in a timely manner. Defendants violated each of these core requirements in their establishment and operation of the Commission.

The biased and imbalanced Religious Liberty Commission, operating without transparency, has injured Plaintiffs, who encompass an interfaith group and groups representing three minority religious traditions. All Plaintiffs understand freedom of religion to include the right to be free from discrimination, the right for all people to be treated equally, and the separation of religion and government. Plaintiffs' efforts to share these crucial perspectives with the Commission have been thwarted by the Commission's failure to comply with transparency requirements, and their perspectives are not reflected among the Commission's membership.

The Commission was initially slated to conclude its operations in September 2027. But just over two weeks ago, on March 16, 2026, the Commission announced that it would be abruptly concluding its operations a year and a half ahead of schedule, holding its final meeting on April 13, and issuing its final report on or around May 1, 2026. Given this abrupt change, Plaintiffs now request emergency relief. Plaintiffs will be irreparably harmed by the publication of the Commission's report. The biased and illegal composition of the Commission, and the Commission's violation of transparency requirements and its frustration of Plaintiffs' ability to stay abreast of the Commission's activities and provide input to the Commission's final report, will taint any final report produced by the Commission. And once the Commission's final report is issued, disseminated, and read by policy makers, the damage will be done. Plaintiffs therefore ask this Court to enjoin the Commission from issuing its final report while this litigation proceeds in order to preserve the status quo. Plaintiffs also ask this court to order Defendants to comply with FACA's transparency requirements and make available the records required by law, so that Plaintiffs may inform themselves and their constituencies of the Commission's activities and provide meaningful input on the Commission's final report.

## BACKGROUND

### I. The Federal Advisory Committee Act

 "Congress enacted FACA in substantial part to provide uniform standards for the creation, operation, and management of advisory committees." *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 16 (1st Cir. 2020) (citation omitted). Prior to FACA, special interests used advisory committees to steer federal decisionmaking without public participation and scrutiny. *See* H.R. Rep. No. 92-1017, at 3496 (1972). Congress saw "great danger[]" in "special interest groups . . . us[ing] their membership on such bodies to promote their private concerns." *Id*. at 3497; *see also Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 453 (1989) ("FACA was enacted to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals . . . ."). The "principal purpose" of FACA "was to enhance the public accountability of advisory committees established by the Executive Branch." *Pub. Citizen*, 491 U.S. at 459. To effectuate this purpose, FACA imposes two statutory duties of relevance here: "a statutory duty to ensure transparency" and a corresponding duty to ensure "a balanced membership in forming advisory committees." *Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 135 (D. Mass. 2021). Both duties are equally critical to fulfilling FACA's promise.

FACA's fair balance requirement provides that all advisory committees must be "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2). "[T]he 'fairly balanced' requirement was 'designed to ensure that persons or groups directly affected by the work of a particular advisory committee would have some representation on the committee.'" *Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 604 (S.D.N.Y. 2019) (quoting *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983)); *see*

3

*also Union of Concerned Scientists*, 954 F.3d at 16 (explaining that FACA "followed on the heels of a disclosure that '[an Executive office] . . . had established close liaison with an Advisory Council . . . composed entirely of business officials from each of the major industries' but not 'consumer, labor, []or small business representatives'" (quoting S. Rep. No. 92-1098, at 2 (1972))).

Additionally, FACA aims to "open to public scrutiny the manner in which government agencies obtain advice from private individuals and groups." *Wash. Legal Found. v. Am. Bar Ass'n Standing Comm. on the Fed. Judiciary*, 648 F. Supp. 1353, 1358 (D.D.C. 1986) (citation omitted). Accordingly, FACA requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available" to the public, subject only to limited exceptions. 5 U.S.C. § 1009(b). Timeliness in this context requires that, "whenever practicable," the advisory committee must provide the public with "access to the relevant materials before or at the meeting at which the materials are used and discussed." *Food Chem. News v. Dep't of Health & Hum. Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992).

## II. Religious Liberty Commission

On May 1, 2025, President Donald Trump established the Religious Liberty Commission by Executive Order.[1] Per the Executive Order, the Commission was created to "defend religious liberty for all Americans" and to "celebrate America's peaceful religious pluralism."[2] The Executive Order assigned the Commission two central tasks to this end: (1) to produce a "comprehensive report" on religious liberty and pluralism, and (2) to "advise the White House"

---

[1] Establishment of the Religious Liberty Commission, Exec. Order No. 14291, 90 Fed. Reg. 19417 (May 1, 2025).
[2] *Id.* at 19418.

on "religious liberty policies."[3] To accomplish these tasks, the Executive Order provided that the President would appoint members to the Commission from "various sectors of society . . . to offer diverse perspectives on how the Federal Government can defend religious liberty for all Americans."[4]

Of the individuals that the President ultimately appointed to the Commission, all are Christian except for one Orthodox Jewish member.[5] These members have espoused the belief that the United

---

[3] *Id.*

[4] *Id*. at 19417–18.

[5]*See Commissioners and Advisory Board Members*, U.S. Dep't of Just., https://www.justice.gov/religious-liberty-commission/commissioners-and-advisory-board-members [https://perma.cc/23HN-MVT5] (last visited Apr. 1, 2026) (listing Commission members); *Stand for Christ*, Dan Patrick: Texas Lieutenant Governor, https://www.danpatrick.org/standforchrist/ [https://perma.cc/BE2W-ET48] (last visited Apr. 1, 2026) (Dan Patrick); Rachel Zoll, *Carson Opens Up About His Membership in Seventh-Day Adventist Church*, PBS News (Oct. 31, 2015), https://www.pbs.org/newshour/politics/carson-opens-membership-seventh-day-adventist-church [https://perma.cc/K7FA-7CG3] (Dr. Ben Carson); *Franciscan University Welcomes Catholic Scholar, Ryan T. Anderson, PhD, as Visiting Fellow at the Veritas Center for Ethics in Public Life*, Franciscan (Sept. 13, 2017), https://franciscan.edu/franciscan-university-welcomes-catholic-scholar-ryan-t-anderson-phd-as-visiting-fellow-at-the-veritas-center-for-ethics-in-public-life/ [https://perma.cc/PGK9-EB7G] (Ryan T. Anderson); *Bishop Robert Barron*, Word on Fire, https://www.wordonfire.org/about/bishop-robert-barron/ [https://perma.cc/2A6Y-6VMS] (last visited Apr. 1, 2026) (Bishop Robert Barron); *His Eminence, Cardinal Timothy Dolan*, Archdiocese of N.Y., https://www.archny.org/cardinal-dolan [https://perma.cc/VG7S-JDRF] (last visited Apr. 1, 2026) (Cardinal Timothy Dolan); *Franklin Graham*, Billy Graham Evangelistic Ass'n, https://billygraham.org/franklin-graham [https://perma.cc/NQH8-HW79] (last visited Apr. 1, 2026) (Pastor Franklin Graham); *Supreme Court Agrees that Mississippi Man Should Have His Day in Court to Claim His First Amendment Rights*, First Liberty (Mar. 20, 2026), https://firstliberty.org/media/supreme-court-agrees-that-mississippi-man-should-have-his-day-in-court-to-claim-his-first-amendment-rights/ [https://perma.cc/98DR-83UH] (Allyson Ho); Sylvia St. Cyr, *Dr. Phil Shares Personal Testimony of Coming to Christ*, CHVNRadio (Mar. 19, 2024), https://chvnradio.com/articles/dr-phil-shares-personal-testimony-of-coming-to-christ [https://perma.cc/5NL6-TH7M] (Dr. Phil McGraw); *When Truth Became Personal: Eric Metaxas at Cornerstone University*, Cornerstone Univ. (Nov. 6, 2025), https://www.cornerstone.edu/when-truth-became-personal-eric-metaxas-at-cornerstone-university/ [https://perma.cc/Y9VU-HPVD] (Eric Metaxas); First Liberty Institute, *35 Years on the Frontlines of Faith |Kelly Shackelford's Story* (YouTube, June 24, 2024), https://www.youtube.com/watch?v=v3kKQYFd61k (Kelly Shackelford); *Clergy & Professional Team*, Congregation Shearith Israel, https://www.shearithisrael.org/about/staff/professional-team/ [https://perma.cc/8PBD-DEJV] (last visited Apr. 1, 2026) (Rabbi Meir Soloveichik); *About*, Paula White Ministries,

States is a "Christian" or "Judeo-Christian" nation,[6] have championed the legal primacy of a

specific "Judeo-Christian" worldview at the expense of the rights of other groups,[7] and have

https://paulawhite.org/about/ [https://perma.cc/3BAT-JWAC] (last visited Apr. 1, 2026) (Pastor Paula White); *Faith in Action for Pam Bondi*, Fox 13 Tampa Bay (Feb. 8, 2025), https://www.fox13news.com/video/1590277 [https://perma.cc/GK7P-GVE5] (Pamela Bondi); Cissie Graham Lynch, *Q&A with Scott Turner: From the NFL to the White House*, Decision Mag. (May 1, 2025), https://billygraham.org/decision-magazine/articles/q-a-with-scott-turner-from-the-nfl-to-the-white-house [https://perma.cc/XLJ6-NX5E] (Scott Turner); Meredith McGraw & Natalie Andrews, *Vince Haley Is the Most Influential Trump Adviser You've Probably Never Heard Of*, Wall St. J. (Mar. 21, 2025), https://www.wsj.com/politics/elections/the-most-influential-trump-adviser-youve-probably-never-heard-of-85ac4a3a?gaa_at=eafs&gaa_n=AWEtsqeL1DuL0zGM2meD68K1Hp-jOU7ke3C1PIr8G3Ej88VVY96aD1SlV6Q2Ax1fjuo%3D&gaa_ts=69c96ce4&gaa_sig=KoJtAiYFTv7BVHhmV7mpn6m9S67nI0_QAD0_joZRvMC8vzl1-3u4va13z9p06GVrVK_4eT3DxHlH5eOVaXZt2w%3D%3D [https://perma.cc/X56P-36AB] (Vince Haley).

[6] *See, e.g.*, Katharine Wilson, *Texas Lt. Gov. Dan Patrick to Lead Trump's Commission on Religious Liberty*, Tex. Trib. (May 1, 2025), https://www.texastribune.org/2025/05/01/dan-patrick-trump-religious-liberty-commission/ [https://perma.cc/RZ2H-5ZX2] (quoting Dan Patrick's statement that America is "a Christian nation"); Franklin Graham, *Franklin Graham: We Stand on The Gospel*, Billy Graham Evangelistic Ass'n of Can. (Apr. 7, 2021), https://www.billygraham.ca/stories/franklin-graham-we-stand-on-the-gospel/ [https://perma.cc/QN69-XA5N] (referencing "the Judeo-Christian beliefs that have undergirded our nation"); Meir Soloveichik, *A Nation Under God: Jews, Christians, and the American Public Square*, 14 Torah u-Madda J. 62, 63 (2006), https://www.yutorah.org/lectures/lecture.cfm/740050 [https://perma.cc/8UQW-YK3D] (arguing that "the United States is a religious nation, whose very governmental institutions proclaim the existence of God"); Video posted by Paula White (@paulamichellewhite), Instagram (Sept. 15, 2025), https://www.instagram.com/reel/DOnzFNPkQbo/ [https://perma.cc/922M-QUFZ] ("Our nation was founded on Judeo-Christian values.").

[7] *See, e.g.*, Julie Asher, *Cardinal Dolan Says Senate's Marriage Bill Threatens Religious Liberty*, Cath. Rev. (Nov. 21, 2022), https://catholicreview.org/cardinal-dolan-says-senates-marriage-bill-threatens-religious-liberty/ [https://perma.cc/PTU8-3D9K] (describing Cardinal Dolan's opposition to a law codifying the right to marriage equality); Troy Matthews, *Trump Faith Advisor: Placing LGBTQ Foster Youth in Safe Homes is 'Wickedness and Darkness'*, MeidasTouch News (June 21, 2024), https://meidasnews.com/news/trump-faith-advisor-placing-lgbtq-foster-youth-in-safe-homes-is-wickedness-and-darkness [https://perma.cc/TKK4-SHDB] (Paula White describing rules protecting LGBTQ youth in foster care as "wickedness and darkness"); Minn. Cath. Conf., *Bishop Barron on Religious Freedom & Gender Ideology in Minnesota* (YouTube, May 6, 2024), https://www.youtube.com/watch?v=HDTG6M7H_-8 (Bishop Barron describing his opposition to a law that would protect abortion and LGBTQ rights); Meir Y. Soloveichik, Donald Wuerl, & Charles Colson, *United We Stand for Religious Freedom*, Wall St. J. (Feb. 10, 2012),

6

advocated for governmental promotion of their brand of "Judeo-Christian" beliefs.[8] Several members of the Commission have made disparaging remarks about other religions, including Islam.[9] There are no Hindu, Sikh, Muslim, or non-religious members of the Commission, and none of the members of the Commission represents the interests of interfaith organizations or communities. In an address to the Commission, Defendant Trump made clear that this biased perspective is purposeful and in keeping with his view that the Commission's true purpose is to "protect the Judeo-Christian principles of our founding."[10]

On December 15, 2025, Plaintiff Rev. Paul Brandeis Raushenbush, President of Interfaith Alliance, requested to be appointed to the Commission so that the Commission would include a viewpoint from the interfaith community and reflect the perspective of an organization that

---

https://www.wsj.com/articles/SB10001424052970204136404577211601075404714?gaa_at=eafs [https://perma.cc/Q7R5-6U96] (Rabbi Soloveichik arguing that regulations requiring that employer-sponsored insurance plans cover contraception violate religious freedom of employers).

[8] *See, e.g.*, Wilson*, supra* note 6 (describing Dan Patrick's endorsement of legislation to require the posting of the Ten Commandments in public school classrooms); Soloveichik, *supra* note 6, at 63 (Rabbi Soloveichik arguing for "government-affirmed faith"); Elana Schor, *Secular Groups Decry Carson's Church and State Comment*, AP News (Oct. 22, 2019), https://apnews.com/general-news-6dc62d44b0e74ad4bd5528b3d962bbc8 [https://perma.cc/H5RV-QGYR] (describing Ben Carson's suggestion that church and state should "work together to promote godly principles").

[9] *See, e.g.*, Gustav Niebuhr, *A Nation Challenged: The Evangelist; Muslim Group Seeks to Meet Billy Graham's Son*, N.Y. Times (Nov. 20, 2001), https://www.nytimes.com/2001/11/20/us/a-nation-challenged-the-evangelist-muslim-group-seeks-to-meet-billy-graham-s-son.html [https://perma.cc/7PAT-SYLE] (noting Franklin Graham's statement that Islam is a "very evil and wicked religion"); Eric Metaxas (@ericmetaxas), X (Feb. 21, 2025, at 04:43 ET), https://x.com/ericmetaxas/status/1892872665230086619 [https://perma.cc/EF37-R825] ("Islam is a death cult."); Martin Pengelly, *Ben Carson Says No Muslim Should Ever Become US President*, The Guardian (Sept. 20, 2015), https://www.theguardian.com/us-news/2015/sep/20/ben-carson-no-muslim-us-president-trump-obama [https://perma.cc/43XZ-DGDJ] (quoting Ben Carson's statements that a Muslim person should not be president and that Islam is inconsistent with the Constitution).

[10] Donald J. Trump, *Remarks to the White House Religious Liberty Commission*, Am. Presidency Project (Sept. 8, 2025), https://www.presidency.ucsb.edu/documents/remarks-the-white-house-religious-liberty-commission [https://perma.cc/ZF8F-UX8X].

advocates for secular government and equal rights for all, and advocates against religious discrimination and violence. Decl. of Paul Brandeis Raushenbush ("Raushenbush Decl.") ¶ 15 & Ex. A. His application was constructively denied when he failed to receive a response to his request. *Id*. ¶ 16.

The specific "Judeo-Christian" outlook of the Commission's membership has shaped the work of the Commission in various ways. For example, five out of six Commission meetings have been held at the Museum of the Bible, an explicitly Christian institution.[11] The Commission has opened or closed five of its meetings with a Christian prayer, including prayers explicitly invoking Jesus Christ.[12] And Commission members have used meetings as a platform for their specific worldview. For example, at the most recent meeting, Commission members stated that "everything we have in this country comes from a biblical Judeo-Christian foundation,"[13] compared anti-discrimination protections for LGBTQ individuals to the atrocities committed by the Nazis,[14] suggested that

---

[11] *See* Meeting of the Religious Liberty Commission, 90 Fed. Reg. 22514-01 (May 28, 2025) (first meeting); Meeting of the Religious Liberty Commission, 90 Fed. Reg. 35934-01 (July 30, 2025) (second meeting); Meeting of the Religious Liberty Commission, 90 Fed. Reg. 41124-01 (Aug. 22, 2025) (third meeting); Meeting of the Religious Liberty Commission, 91 Fed. Reg. 725-02 (Jan. 8, 2026) (fifth meeting); Meeting of the Religious Liberty Commission, 91 Fed. Reg. 725-01 (Jan. 8, 2026) (sixth meeting). The Commission's final meeting will also be held at the Museum of the Bible. *See* Meeting of the Religious Liberty Commission, 91 Fed. Reg. 16016-01 (Mar. 31, 2026) (seventh meeting).

[12] Dep't of Just., *First Hearing of the Religious Liberty Commission, Part 1*, at 00:00:45 (YouTube, June 16, 2025), https://www.youtube.com/watch?v=zsdFM-pNqc0; Dep't of Just., *Second Hearing of the Religious Liberty Commission, Part 1*, at 00:05:30 (YouTube, Sept. 9, 2025), https://www.youtube.com/watch?v=Dkk9wt9Tjw4; Dep't of Just., *Third Hearing of the Religious Liberty Commission, Part 2*, at 01:59:50 (YouTube, Oct. 1, 2025), https://www.youtube.com/watch?v=H4o2Q6PUKZs; Dep't of Just., *Fourth Hearing of the Religious Liberty Commission, Part 1*, at 00:01:27 (YouTube, Jan. 21, 2026), https://www.youtube.com/watch?v=LXwBA9xGGoE; Dep't of Just., *Religious Liberty Commission, Sixth Hearing*, at 00:02:05 (YouTube, Mar. 16, 2026), https://www.youtube.com/watch?v=MP2fFuYT3bM.

[13] *Religious Liberty Commission, Sixth Hearing*, *supra* note 12, at 02:12:05 (statement of Eric Metaxas).

[14] *Id.* at 02:14:28 (statement of Eric Metaxas).

transgender people are inconsistent with "a basic philosophical and biblical approach to reality,"[15] and espoused the view that "there's a leftist movement who wants to divide and destroy our families and destroy God and be God."[16]

Defendants have not made meeting minutes, agendas, or other materials produced for or by the Commission publicly available. For example, at the December 10 meeting, a witness referenced packets that Commission members would receive.[17] Those packets have not been made public. Additionally, Defendants have produced a complete transcript for only its first meeting.[18]

The Religious Liberty Commission had originally been scheduled to end operations on July 4, 2026, but President Trump issued an executive order on September 29, 2025, that extended the Commission until September 30, 2027.[19] In the closing seconds of the most recent Commission meeting, however, Commission Chair Dan Patrick stated that the Commission's next meeting, scheduled for April 13, 2026, "will be our last hearing" and that the Commission "will present our report to the President in May, almost one year from the day that he issued the executive order."[20]

### III. This Litigation

Plaintiffs filed this lawsuit on February 9, 2026, challenging the illegal composition and operation of the Religious Liberty Commission in violation of FACA. *See* Compl., Dkt. No. 1.

---

[15] *Id.* at 01:06:56 (statement of Bishop Robert Barron).

[16] *Id.* at 01:25:05 (statement of Dan Patrick).

[17] *Presidential Religious Liberty Commission Fourth Hearing Transcript: Testimony on the Military Chaplaincy*, Dep't of Just., at 9 (Dec. 10, 2025), https://www.justice.gov/opa/media/1421006/dl?inline [https://perma.cc/FN2Y-J6DS] (referencing "[t]estimonies in the packet you will receive").

[18] *See Presidential Religious Liberty Commission First Hearing Transcript*, Dep't of Just. (June 16, 2025), https://www.justice.gov/religious-liberty-commission/media/1407716/dl?inline [https://perma.cc/ZD6X-WVWK]. An incomplete transcript was published for the fourth Commission meeting. *See Presidential Religious Liberty Commission Fourth Hearing Transcript: Testimony on the Military Chaplaincy*, *supra* note 17.

[19] Continuance of Certain Federal Advisory Committees, Exec. Order No. 14354, 90 Fed. Reg. 48145 (Sept. 29, 2025).

[20] *Religious Liberty Commission, Sixth Hearing*, *supra* note 12, at 04:04:40.

Plaintiffs are the Interfaith Alliance, Rev. Paul Brandeis Raushenbush, Muslims for Progressive Values, Hindus for Human Rights, and the Sikh American Legal Defense and Education Fund. Collectively, they represent minority religious communities and an interfaith group who stand to be impacted by the Commission's work. Plaintiffs are deeply engaged in advocacy, education, and policymaking that seeks to advance true religious liberty for all Americans, including the right to be free from discrimination and religiously motivated hate, and combating government-endorsed religion. *See* Raushenbush Decl. ¶¶ 4–8; Decl. of Ani Zonneveld ("Zonneveld Decl.") ¶¶ 3–5; Decl. of Ria Chakrabarty ("Chakrabarty Decl.") ¶¶ 2–4, 6, 8; Decl. of Kiran Kaur Gill ("Gill Decl.") ¶¶ 3–6, 13–14.

In light of the Commission's recent announcement that it intends to complete meetings this month and fast-track the publication of its final report, Plaintiffs now move for a preliminary injunction.

**LEGAL STANDARDS**

Courts generally grant preliminary injunctions "where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009)). The moving party also must demonstrate "that a preliminary injunction is in the public interest." *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19–20 (2008)).

Where, as here, the challenged action is not a statute or a regulation, but rather action "formulated solely by the executive branch," the lower "serious questions" standard applies. *Able v. United States*, 44 F. 3d 128, 131 (2d. Cir. 1995) (citing *Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980)). The government action challenged here is taken unilaterally by the Executive Branch and is in fact contrary to the statutes enacted after a "full play of the democratic process." *Id.*; *see also Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1326, 1339 (2d Cir. 1992) (noting that "the 'likelihood of success' prong need not always be followed merely because a movant seeks to enjoin government action"), *vacated as moot*, 509 U.S. 918 (1993). Plaintiffs, however, are able to satisfy even the higher "likelihood of success" standard. Likewise, injunctions that preserve the status quo pending resolution of the case, as Plaintiffs are requesting here, are subject to a lower standard than injunctions that seek to alter it. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018).

## ARGUMENT

### I. Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed on the merits, or at a minimum, there is a serious question going to the merits and a balance of hardships tips in their favor. The Religious Liberty Commission is a federal advisory committee subject to FACA, and Defendants have failed to comply with FACA's transparency and fair-balance requirements. Preliminary relief is necessary to preserve the status quo and prevent the Commission from issuing its unlawful report while this Court takes the time necessary to adjudicate the merits of Plaintiffs' claims.

### A. The Religious Liberty Commission Has Failed to Comply with FACA's Transparency Requirements.

Defendants' violations of FACA's transparency and records requirements are straightforward. A federal advisory commission's materials should be made "available to the

11

public as a matter of course, unless a FOIA exception applies." *Nat. Res. Def. Council v. Zinke*, No. 18-cv-6903-AJN, 2020 WL 5766323 at *5 (S.D.N.Y. Sept. 28, 2020); *see also Food Chem. News*, 980 F.2d at 1472. Defendants have blatantly flouted these rules. Although they have posted YouTube videos for Commission hearings, they have, among other violations, failed to make publicly available complete transcripts for the Commission's meetings, failed to provide detailed agendas, meeting minutes, or witness lists, and have not published any materials that were provided to or prepared for or by the Commission.

Under section 1009(b) of FACA, an advisory committee "is generally obligated to make available for public inspection and copying all materials that were made available to or prepared for or by an advisory committee." *Food Chem. News*, 980 F.2d at 1469. That includes all "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the committee. 5 U.S.C. § 1009(b). A document covered under Section 1009(b) must be disclosed unless it is covered by an exemption set forth in Section 552(b) of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 1009(b) (noting that FACA disclosure shall be "[s]ubject to section 552 of title 5, United States Code"); *see also Nat. Res. Def. Council v. Johnson*, 488 F.3d 1002, 1003 (D.C. Cir. 2007) (observing that FACA requires committees to "make committee documents available to the public subject to the exemptions of FOIA"). In addition, section 1009(b) requires the disclosure of meeting minutes, which must include "[a]n accurate description of each matter discussed" in each meeting. 5 U.S.C. § 1009(c).

The timing of those disclosures matters. FACA's disclosure and transparency requirements are intended to provide for the contemporaneous availability of advisory committee documents. Section 1009(b)'s disclosure requirements, working in conjunction with Section

12

1009(a)'s provisions enabling the public to be notified of and attend committee meetings, provide a meaningful opportunity to fully comprehend the committee's work. *See Food Chem. News*, 980 F.2d at 1469. As the D.C. Circuit has explained, "[i]n order for 'interested parties to present their views,' and for the public to 'be informed with respect to the subject matter,' it is essential that, whenever practicable, parties have access to the relevant materials *before or at the meeting at which the materials are used and discussed*." *Id*. at 1472 (emphasis added).

Plaintiffs are likely to succeed on the merits of their transparency claims. Defendants have failed to produce the records required under FACA at all, much less to produce them in a timely manner. With the final meeting of the Commission now scheduled for April 13 and the final report set to be published in May, time is of the essence. Plaintiffs need access to the improperly withheld materials in order to provide any sort of meaningful input to the Commission before the Commission finishes and publishes its report.

### B. The Religious Liberty Commission is Unfairly Imbalanced.

The Religious Liberty Commission is not "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2)–(3), (c). Relying on common definitions of "fair" and "balance," this Court has characterized the test under FACA's fair balance requirement as asking whether an advisory committee's overall membership is "characterized by honesty and impartiality, . . . is equitable and free of bias or prejudice," and, "more concrete . . . still," whether it "equalizes in number, force, or effect" or "measures competing interests and offsets them appropriately." *Nat. Res. Def. Council*, 410 F. Supp. 3d at 603 (citation modified). The mandate of "balanced membership" applies "to all types of advisory committees," including the present Commission. *Nat'l Anti-Hunger Coal.*, 711 F.2d at 1073 n.1.

Under these standards—or any other standard that accords with common sense—the Religious Liberty Commission is not fairly balanced. While the Commission is ostensibly tasked with defending religious liberty for all Americans and celebrating religious pluralism, it actually represents only a single "Judeo-Christian" viewpoint. Only one member of the Commission is not Christian and even he does not bring conceptual diversity to the Commission. *See supra* notes 5–7. The Commission's members have promoted the primacy of a Judeo-Christian world view in the public sphere, advocated for discrimination against minority groups under the guise of "religious liberty," and otherwise supported policies that threaten religious freedom for all those who do not conform to their particular worldview. *See supra* notes 6–8.

The Commission has held five of its six meetings at the Museum of the Bible and has opened or closed its meetings with an overtly Christian prayer. *See supra* note 11. Defendant Trump has made clear that the true purpose of the Commission is to "protect the Judeo-Christian principles of our founding," *supra* note 10, and the Commission's meetings have repeatedly referenced the belief that the United States was founded as a "Judeo-Christian" or "Christian" nation, *see, e.g.*, *supra* note 12; *Presidential Religious Liberty Commission First Hearing Transcript, supra* note 18, at 4. Most troublingly, several Commission members have demonstrated marked hostility toward Islam. *See supra* note 9. The Commission lacks representation from any interests that do not align with the Commission's "Judeo-Christian" viewpoint, including from groups representing minority religions who will be directly impacted by the Commission's work.[21]

---

[21] The Commission has even faced internal accusations that it is intolerant of a fair balance of viewpoints. Former member of the Commission Carrie Prejean Boller, who was removed from the Commission, accused the Commission of only "pretending to stand for religious freedom" and stated that "this commission does not truly care about religious liberty." *See* Carrie Prejean Boller (@CarriePrejean1), X (Mar. 20, 2026, at 10:39 ET)

Because "[t]he concepts of fairness, balance, and influence are not foreign to courts," FACA's plain text provides meaningful standards by which to evaluate committee balance. *Union of Concerned Scientists*, 954 F.3d at 19; *see also Nat. Res. Def. Council*, 410 F. Supp. 3d at 603. Courts evaluating claims under FACA's "fairly balanced" mandate "consider the functions assigned to each individual committee in evaluating whether its balance is fair." *Union of Concerned Scientists*, 954 F.3d at 20. The Commission's function is to "produce a comprehensive report on the foundations of religious liberty in America, the impact of religious liberty on American society, current threats to domestic religious liberty, strategies to preserve and enhance religious liberty protections for future generations, and programs to increase awareness of and celebrate America's peaceful religious pluralism," and to advise the White House on religious policy. 90 Fed. Reg. at 19418–19. The Executive Order establishing the Commission explicitly provides that the Commission "shall include . . . representatives of . . . religious communities . . . to offer diverse perspectives on how the Federal Government can defend religious liberty for all Americans." *Id*. A fair balance of viewpoints, in light of the Commission's assigned functions, therefore, would require representation from a diverse group of religions, including minority religious groups that have been victims of discrimination and violence, as well as representatives from groups that address religious pluralism, such as an interfaith group.

Without a fair balance of religious viewpoints represented on the Commission, the Commission is ill-equipped to carry out its function of celebrating America's "peaceful religious pluralism," let alone to provide guidance on responding to "threats to domestic religious liberty."

---

https://x.com/CarriePrejean1/status/2029408732933963957 [https://perma.cc/P2Z7-QRMB];
Carrie Prejean Boller (@CarriePrejean1), X (Mar. 4, 2026, at 11:08 ET)
https://x.com/CarriePrejean1/status/2035003186235207884 [https://perma.cc/6VRX-MRD5].

15

90 Fed. Reg. at 19418. The Commission lacks the diversity of viewpoints to adequately consider, for example, the attacks on houses of worship of "many religions." *Id*. There have been dozens of attacks on mosques in recent years and one of the deadliest mass shootings at a house of worship in U.S. history took place at a Sikh temple.[22] Yet, despite the Commission's mandate to consider attacks on houses of worship, the Commission lacks any members from the minority religious communities that have been the victims of these attacks. These topics directly affect Plaintiffs and the communities they serve and represent, *see* Zonneveld Decl. ¶¶ 9–12; Gill Decl. ¶¶ 8, 14–15—yet no member of the Commission represents any of Plaintiffs' interests.

This case thus closely mirrors others where courts have found that an advisory committee was not fairly balanced. *See, e.g.*, *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 144 (D.D.C. 2020) (holding that advisory committee on improving policing lacked fair balance because all of its members were "current or former law enforcement," and there were no members from civil rights groups, no defense attorneys or academics, and no representatives from "the communities [the police] protect"); *Nw. Ecosystem All. v. Off. of U.S. Trade Rep.*, No. C99–1165R, 1999 WL 33526001, at *7–8 (W.D. Wash. Nov. 9, 1999) (holding that forest products advisory committees lacked fair balance because they consisted entirely of industry representatives without any environmental representatives); *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 566 F. Supp. 1515, 1517 (D.D.C. 1983) (holding that advisory committee that advised on, among other things, anti-hunger policies of "general national import" was not fairly balanced because it included only members from the

---

[22] *Nationwide Anti-Mosque Activity*, ACLU, https://www.aclu.org/nationwide-anti-mosque-activity [https://perma.cc/M3Q4-LU9C] (last visited Apr. 1, 2026); Rob Mentzer, *Wisconsin's Sikh Community a Decade After Fatal Temple Shooting*, NPR (July 28, 2022), https://www.npr.org/2022/07/28/1114335390/wisconsins-sikh-community-a-decade-after-fatal-temple-shooting [https://perma.cc/ATD2-PR4G].

business community and excluded the views of poverty advocates). The Commission's "deliberate and explicit effort to avoid the representation of any competing viewpoints on the subject matter of [the] advisory committee" is unlawful. *NAACP Legal Def. & Educ. Fund,* 496 F. Supp. 3d at 143–44. Any work product produced by the Commission will be invariably tainted by these statutory violations.

## II.  Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm.

To establish irreparable harm, "a litigant must show that they 'will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" *Nat'l Inst. of Family & Life Advocs. v. James*, 160 F.4th 360, 379 (2d Cir. 2025). Absent an injunction, Plaintiffs here will suffer irreparable harm in two ways.

First, Plaintiffs suffer an informational injury due to the Commission's lack of transparency. Plaintiffs urgently need access to the Commission's records to inform Plaintiffs' comments on the Commission's report, which is slated to be published on or around May 1, and any subsequent policy recommendations made by the Commission. *See* Raushenbush Decl. ¶¶ 10–14; Zonneveld Decl. ¶¶ 6–7, 13; Chakrabarty Decl. ¶¶ 5, 9; Gill Decl. ¶¶ 9–11, 15. Plaintiffs also require this information to inform the public and advocate on behalf of their members on an "ongoing proceeding[] of national importance." *Ctr. for Pub. Integrity v. U.S. Dep't of Defense*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019); Raushenbush Decl. ¶¶ 4–8; Zonneveld Decl. ¶¶ 3–7; Chakrabarty Decl. ¶¶ 2–3, 5; Gill Decl. ¶¶ 5–6, 8–9.

As numerous courts, including the Supreme Court, have made clear, "refusal to permit [interested parties] to scrutinize [a] Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury." *Pub. Citizen*, 491 U.S. at 449; *see also, e.g.*, *Nat. Res. Def. Council*, 410 F. Supp. 3d at 598 (finding informational injury where advisory committee disclosed

17

incomplete meeting transcripts); *NAACP Legal Def. & Educ. Fund*, 496 F. Supp. 3d at 128 (noting government's concession that plaintiffs had informational standing based on claim that advisory committee "has not made its records available for public inspection"). Moreover, courts have repeatedly held that the withholding of information in such contexts results in irreparable harm. *See, e.g.*, *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("[W]here an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate."); *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12 (finding irreparable harm where disclosure was necessary for plaintiffs to inform the public about matters of national concern); *Am. Oversight v. Dep't of State*, 414 F. Supp. 3d 182, 186–87 (D.D.C. 2019) (finding irreparable harm stemming from government's failure to timely comply with record disclosure requirements); *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) (finding irreparable harm where information requested related to "current national debate").

Second, Plaintiffs suffer a representational injury stemming from the Commission's lack of fair balance. It is well-established that being denied "access to a representative voice" on an advisory committee is a cognizable injury to parties "directly impacted" by the Commission's work, like Plaintiffs and their members are here. *NAACP Legal Def. & Educ. Fund*, 496 F. Supp. 3d at 128; *see Nat. Res. Def. Council*, 410 F. Supp. 3d at 601–02; *Uejio*, 521 F. Supp. 3d at 144–45; *Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 180 (D.D.C. 2022); *Am. Chem. Council, Inc. v. Nat'l Acad. of Sciences*, No. 23-2113, 2024 WL 1141465, at *8 (D.D.C. Mar. 15, 2024). This type of harm is particularly apparent when "a party with a direct interest in the committee's work applies for membership and is denied access." *Nat. Res. Def. Council*, 410 F. Supp. 3d at 601. Here, Plaintiffs and their members have a strong interest in, and will be directly

18

impacted by, the Commission's work, *see* Raushenbush Decl. ¶¶ 2, 4, 9, 13–14; Zonneveld Decl. ¶¶ 2–3, 6, 8, 11–12; Chakrabarty Decl. ¶¶ 2, 4, 6–8; Gill Decl. ¶¶ 2–3, 7, 12–15, and Plaintiff Rev. Raushenbush applied for but was constructively denied membership on the Commission, Raushenbush Decl. ¶¶ 15–16. Plaintiffs' "representational injury . . . has already accrued (and continues to accrue)." *NAACP Legal Def. & Educ. Fund*, 496 F. Supp. 3d at 129.

Moreover, Plaintiffs' inability "to influence" the Commission is an injury that "cannot be remedied" after the Commission's report is published. *Nw. Ecosystem All.*, No. C99–1165R, 1999 WL 33526001, at *7. Once the Commission's report is published, it will carry with it the imprimatur of legitimacy from an official federal advisory committee. And once the report is read by both the public and policymakers, it cannot be unread. At that point, the injury to Plaintiffs stemming from the Commission's violations of FACA will be irreversible. That bell cannot be unrung. Because the report will be produced by an unlawfully constituted committee that failed to comply with FACA's requirements—frustrating meaningful input from interested parties and groups directly impacted by the Commission's work—the report will be fundamentally unlawful and its publication will irreparably harm Plaintiffs.

### III. Balance of Harm and Public Interest Favor Plaintiffs.

The equities and public interest weigh decisively in favor of a preliminary injunction. FACA's purpose is itself to vindicate a public interest: the public's "right to know how its government is conducting the public's business." *Pub. Citizen v. Nat'l Advisory Comm. On the Peace Corps*, 703 F. Supp. at 129 (D.D.C. 1989); *see also Env't Def. Fund, Inc. v. Wright*, No. CV 25-12249-WGY, 2026 WL 183484, at *2 (D. Mass. Jan. 23, 2026) (finding "compelling public interest" in FACA compliance). That public interest is at a grave precipice here. The Commission is on the verge of issuing a report that was produced by an imbalanced Commission that flagrantly ignored the public records and transparency requirements that could have enabled

19

meaningful input from groups that stand to be the most impacted by the Commission's report. The report will play a key role in government policy impacting minority religions as well as groups that advocate for religious pluralism, tolerance, and equal rights for all.

By contrast, Defendants would not suffer cognizable harm by having to comply with their FACA obligations. "[I]gnor[ing] the strictures imposed by FACA to prevent unbalanced commissions . . . leav[es] the public to pay any concomitant price." *Dunlap*, 286 F. Supp. 3d at 111. And an injunction requiring Defendants to comply with FACA before issuing the Commission's report would help prevent injury to the government, by ensuring that the President does not make any policy in reliance on a report that is later declared unlawful.

### IV. This Court Should Order Defendants to Release Required Materials and Enjoin Defendants from Publishing the Commission's Report to Preserve the Status Quo.

Plaintiffs request that the Court declare that Plaintiffs are likely to succeed on their claims that Defendants have violated FACA and that it grant several forms of preliminary injunctive relief: order disclosure of the required Commission documents and other materials; order Defendants to open the Commission's records for inspection, and to provide Plaintiffs with access to the internal Commission materials they would have received if they were appropriately represented on the Commission; and enjoin Defendants from publishing the Commission's report, currently anticipated to be published on or around May 1, until Plaintiffs' claims can be resolved.

As the Fifth Circuit has explained, "[i]f the courts do not enforce FACA by enjoining the work product of improperly constituted committees, FACA will be toothless, merely aspirational legislation." *Cargill, Inc. v. United States*, 173 F.3d 323, 341 (5th Cir. 1999). And, "[i]f FACA has no teeth, the work product of spuriously formed advisory groups may obtain political legitimacy that it does not deserve." *Id.* (citing *Assoc. of Am. Physicians & Surgeons v. Clinton*,

997 F.2d 898, 913 (D.C. Cir. 1993)). Therefore, this Court should preserve the status quo and

pause publication of the Commission's report until it has adjudicated Plaintiffs' claims.[23]

## CONCLUSION

For these reasons, the Court should issue a preliminary injunction.

Dated: April 2, 2026                                Respectfully submitted,

                                                    */s/ Anna L. Deffebach*

                                                    Anna L. Deffebach+
                                                    Ayesha Khan+
                                                    Robin Thurston+
                                                    Skye L. Perryman+
                                                    Democracy Forward Foundation
                                                    P.O. Box 34553
                                                    Washington, D.C. 20043
                                                    Tel: (202) 448-9090
                                                    Fax: (202) 796-4426
                                                    adeffebach@democracyforward.org

                                                    Jenny Samuels+
                                                    Americans United for Separation of Church
                                                    and State
                                                    1310 L Street NW, Suite 200
                                                    Washington, D.C. 20005
                                                    Tel: (202) 466-7308
                                                    samuels@au.org

                                                    + *Admitted pro hac vice.*

---

[23] At a bare minimum, this Court should enter a use injunction prohibiting Defendants from relying on any of the Commission's recommendations or work product in formulating policy. "[T]o allow the government to use the product of a tainted procedure would circumvent the very policy that serves as the foundation of [FACA]" and a use injunction is therefore the "only vehicle that carries the sufficient remedial effect to ensure future compliance with FACA's clear requirements." *Alabama-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103, 1107 (11th Cir. 1994); *see also Cal. Forestry Ass'n v. U.S. Forest Serv.*, 102 F.3d 609, 614 (D.C. Cir. 1996) (noting that a use injunction is appropriate if its "unavailability . . . would effectively render FACA a nullity"). Defendants brazenly violated nearly all of FACA's keystone requirements, assembling an unlawfully imbalanced committee and failing to comply with FACA's transparency and public records requirements. If allowed to stand, this scheme would indeed render FACA a nullity. *See W. Org. of Res. Councils v. Bernhardt*, No. CV 18-139-M-DWM, 2019 WL 3805125, at *10 (D. Mont. Aug. 13, 2019) (granting use injunction where "FACA violation at issue . . . [went] to the very creation and existence of the advisory committee").

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT AND LOCAL RULE 7.1**

Undersigned counsel certifies that this Memorandum of Law complies with the Individual Practices' and Local Rules' limit of 8,750 words as it contains 6,657 words of text according to undersigned's Microsoft Word wordcount function.

*/s/ Anna L. Deffebach*