UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE INTERFAITH ALLIANCE, *et al.,*

              Plaintiffs,

    - against –

DONALD TRUMP, in his official capacity as
President of the United States*, et al.,*

              Defendants.

No. 26 Civ. 1075 (JPC)

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2769/2741
*Attorneys for Defendants*

DANA WALSH KUMAR
CARLY WEINREB
*Assistant United States Attorneys*
    – Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

STATUTORY AND FACTUAL BACKGROUND ....................................................................2

    I.      The Federal Advisory Commission Act .........................................................................2

    II.    The Religious Liberty Commission ................................................................................3

        A. Executive Order No. 14291 .......................................................................................3

        B. The RLC and its Activities to Date..........................................................................4

    III.   The Complaint and Motion for a Preliminary Injunction ...............................................5

LEGAL STANDARDS ...............................................................................................................7

    I.      Motion to Dismiss...........................................................................................................7

    II.    Preliminary Injunction ....................................................................................................8

ARGUMENT ...............................................................................................................................9

    I.      THE COMPLAINT SHOULD BE DISMISSED ...........................................................9

        A. The Court Lacks Subject Matter Jurisdiction ...........................................................9

            i.   Sovereign Immunity Requires Dismissal of Count One.............................9

            ii.  The Document Claims are Moot.................................................................11

            iii. Plaintiffs Lack Standing.............................................................................13

                1.  The Organization Plaintiffs' Alleged "Diversion of Resources"
                    Injuries are not Injuries-in-Fact Sufficient to Confer Standing .....14

                2.  Plaintiffs Do Not Adequately Allege the Causation Element of
                    Standing .................................................................................................17

            iv. Counts One and Two Should Be Dismissed as Non-Justiciable ...............18

B.  The Complaint Should be Dismissed for Failure to State a Claim ........................23

   i.  Plaintiffs Have Failed to Plead an APA Claim Arising From the Allegedly
       Unbalanced Membership of the RLC in Count One.................................23

       1.  The "Fairly Balanced" APA Claims Fail to Allege Final Agency
           Action.................................................................................................24

       2.  Plaintiffs Have Not Alleged that the RLC is Not Fairly
           Balanced..............................................................................................26

   ii.  Plaintiffs' Document Allegations in Count Three Fail to State an APA
        Claim.................................................................................................28

   iii.  Counts Two and Four Should Be Dismissed as Mandamus Relief is
         Unavailable .............................................................................................31

   iv.  Plaintiff Raushenbush has Failed to State Any Cognizable Claims ..........34

II.    THE PRELIMINARY INJUNCTION MOTION SHOULD BE DENIED .................36

A.  No Likelihood of Success On the Merits...............................................................36

B.  Plaintiffs Have Not Shown Irreparable Harm.......................................................36

C.  A Preliminary Injunction Would Not Serve the Public Interest ...........................39

CONCLUSION.................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) ............................................................................................................ 25

*Able v. United States*,
44 F.3d 128 (2d Cir. 1995) .................................................................................................... 9

*ACLU v. Trump*,
266 F. Supp. 3d 133 (D.D.C. 2017) ................................................................................... 32

*A.H. by & through Hester v. French*,
985 F.3d 165 (2d Cir. 2021) ........................................................................................... 8, 36

*Air Espana v. Brien,*
165 F.3d 148 (2d Cir. 1999) ............................................................................................... 25

*Allied Chem. Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980) .............................................................................................................. 31

*Al-Saedi v. Nepal*,
No. 25-CV-1113 (RDM), 2026 WL 764575 (D.D.C. Mar. 18, 2026) ............................. 29, 30

*Am. First Legal Found. v. Cardona*,
630 F. Supp. 3d 170 (D.D.C. 2022) .................................................................................... 30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 7, 30

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,
997 F.2d 898 (D.C. Cir. 1993) ........................................................................................ 21, 33

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 7, 8, 28

*Bennett v. Spear*,
520 U.S. 154 (1997) ......................................................................................................... 24, 25

*Bionpharma Inc. v. CoreRx, Inc.*,
582 F. Supp. 3d 167 (S.D.N.Y. 2022) ................................................................................ 40

*Byrd v. EPA*,
174 F.3d 239 (D.C. Cir. 1999) ........................................................................................... 13

*Califano v. Sanders*,
  430 U.S. 99 (1977)...................................................................................................... 19, 25

*Care One, LLC v. Nat'l Lab. Rels. Bd.*,
  166 F.4th 335 (2d Cir. 2026) ....................................................................................... 8

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)........................................................................................ 8

*Cheney v. U.S. Dist. Court for D.C.*,
  542 U.S. 367 (2004)............................................................................................. passim

*Citizens Against Donald Trump Inc. v. Trump*,
  No. 25 Civ. 311 (SRC), 2026 WL 171774 (E.D. Mo. Jan. 22, 2026)...................................... 26

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971)................................................................................................... 19

*Citizens for Resp. & Ethics in Washington v. Duncan*,
  643 F. Supp. 2d 43 (D.D.C. 2009) ................................................................................ 12

*Citizens for Responsibility and Ethics in Wash. v. Trump*,
  276 F. Supp. 3d 174 (S.D.N.Y. 2017)........................................................................... 14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).............................................................................................. 13, 18

*Claybrook v. Slater*,
  111 F.3d 904 (D.C. Cir. 1997) ........................................................................... 20, 21, 26

*Cnty. of Suffolk, N.Y. v. Sebelius*,
  605 F.3d 135, 140 (2d Cir. 2010) ............................................................................... 10

*Confido Advisors, LLC v. USAA Real Est. Co.*,
  No. 17 Civ. 5632 (JFK), 2018 WL 4265900 (S.D.N.Y. Sept. 6, 2018)................................... 35

*Ctr. for Auto Safety v. Dole*,
  846 F.2d 1532 (D.C. Cir. 1988) .................................................................................. 20

*Ctr. for Law & Educ. v. Dep't of Educ.*,
  396 F.3d 1152 (D.C. Cir. 2005) .............................................................................. 14, 16

*Ctr. for Policy Analysis on Trade & Health (CPATH) v. Office of the U.S. Trade Representative*,
  540 F.3d 940 (9th Cir. 2008) ................................................................................. passim

*Dalton v. Specter*,
511 U.S. 462, 469 (1994) .......................................................................................... 10

*Davis v. Pension Ben. Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) ................................................................................ 40

*De La Mota v. U.S. Dep't of Educ.*,
No. 02 Civ. 4276 (LAP), 2003 WL 21919774 (S.D.N.Y. Aug. 12, 2003) ......................... 24, 25

*Doe v. Vill. of Mamaroneck*,
462 F. Supp. 2d 520 (S.D.N.Y. 2006) ....................................................................... 17

*Dore v. Wormley*,
690 F. Supp. 2d 176 (S.D.N.Y. 2010) ....................................................................... 35

*Dotson v. Griesa*,
398 F.3d 156, 177 (2d Cir. 2005) ............................................................................. 10

*Elec. Priv. info. Ctr. v. Drone Advisory Comm.*,
369 F. Supp. 3d 27, (D.C.C. 2019) ........................................................................... 24

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Educ.*,
48 F. Supp. 3d 1 (D.D.C. 2014) ................................................................................ 17

*Env't Def. Fund, Inc. v. Wright*,
800 F. Supp. 3d 284 (D. Mass. 2025) ................................................................... 38, 39

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ..................................................................................... 36

*Fertilizer Inst. v. U.S.E.P.A.*, et al.,
938 F. Supp. n.3 (D.C.C. 1996) ........................................................................... 21, 22

*Firestone Art LLC v. Philadelphia Indeminity Ins. Co.*,
No. 24 Civ. 3772 (JPC), 2024 WL 2213584 (S.D.N.Y. May 16, 2024) ............................. 38

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994) ..................................................................................... 8, 28

*Fla. Home Builders Ass'n v. Norton*,
496 F. Supp. 2d 1330 (M.D. Fla. 2007) ..................................................................... 29

*Food Chem. News v. Dep't of Health & Hum. Servs.*,
980 F.2d 1468 (D.C. Cir. 1992) ........................................................................... 29, 30

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992)................................................................................................................. 10

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2005)...............................................................................................................36-37

*Giammatteo v. Newton*,
   452 Fed. Appx. 24 (2d Cir. 2011) ............................................................................................ 7

*Guity v. Martinez*,
   No. 03 Civ. 6266 (LAP), 2004 WL 1145832 (S.D.N.Y. May 20, 2004).................................. 28

*Haitian Ctrs. Council, Inc. v. McNary*,
   969 F.2d 1326 (2d Cir. 1992)................................................................................................... 9

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ......................................................................................................... 14, 15

*Heckler v. Chaney*,
   470 U.S. 821 (1985)........................................................................................................... 19, 20

*Hernandez v. United States*,
   939 F.3d 191 (2d Cir. 2019)..................................................................................................... 8

*In re Allied Artists Pictures Corp.*,
   71 B.R. 445 (S.D.N.Y. 1987).................................................................................................... 13

*In re Cheney*,
   334 F.3d 1096 (D.C. Cir. 2003) .............................................................................................. 32

*In re Cheney*,
   406 F.3d 723 (D.C. Cir. 2005) ........................................................................................... 31, 33

*Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*,
   482 U.S. 270 (1987)................................................................................................................. 20

*Laird v. Tatum*,
   408 U.S. 1 (1972)..................................................................................................................... 18

*Lawyers' Comm. for C.R. Under L. v. Presidential Advisory Comm'n on Election Integrity*,
   265 F. Supp. 3d 54 (D.D.C. 2017) ..................................................................................... 37, 40

*Leed Indus. Inc. v. New York State Dep't of Lab (DOL)*,
   No. 09 CIV. 9456 (JSR) 2010 WL 882992 (S.D.N.Y. Mar. 8, 2010) ...................................... 36

vi

*Lincoln v. Vigil et al*,
  508 U.S. 182 (1993) .............................................................................................. 20

*Lorillard, Inc. v. FDA*,
  56 F. Supp. 3d 37 (D.D.C. 2014) ......................................................................... 21

*Lovallo v. Froehlke*,
  468 F.2d 340 (2d Cir. 1972) ................................................................................. 31

*Luckett v. Bure*,
  290 F.3d 493 (2d Cir. 2002) ................................................................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 7, 13

*Lunney v. United States*,
  319 F.3d 550 (2d Cir. 2003) ........................................................................... 10, 19

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ................................................................................... 7

*Manchanda v. Lewis*,
  No. 21-1088-CV, 2021 WL 5986877 (2d Cir. Dec. 17, 2021) ............................. 31

*Martin-Trigona v. Shiff,*
  702 F.2d 380 (2d Cir. 1983) ........................................................................... 11, 12

*Metcalf v. National Petroleum Council et al*,
  553 F.2d 190 (1977) ............................................................................................. 22

*Moore v. Cent. Intel. Agency,*
  No. 25-CV-10751 (LTS), 2026 WL 93866 (S.D.N.Y. Jan. 12, 2026) .................. 35

*Mosseri v. Woodstock Hous. Dev. Fund-Corp.*,
  No. 18 Civ. 9431 (VSB), 2019 WL 2287964, at *2 (S.D.N.Y. May 28, 2019) ...... 10

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*,
  684 F.3d 286 (2d Cir. 2012) ................................................................................. 14

*Nadar v. Baroody*,
  396 F. Supp. 1231 (D.D.C. 1975) ........................................................................ 32

*Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*,
  438 F. Supp. 3d 220 (S.D.N.Y. 2020) .................................................................. 21

*Nat'l Anti-Hunger Coal. v. Exec. Comm. Of the President's Private Sector Survey on Cost Ctrl*,
    711 F.2d 1071 (D.C. Cir. 1983) .................................................................................. 28, 34

*Nat'l Fed'n of Fed. Emps. v. United States*,
    905 F.2d 400 (D.C. Cir. 1990) ........................................................................................ 20

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*,
    No. 2:11-CV-578-FTM-29SPC, 2012 WL 3589804 (M.D. Fla. Apr. 12, 2012)...................... 22

*NYC Employees' Retirement System v. Dole Food Co., Inc.*,
    969 F.2d 1430 (2d Cir.1992)........................................................................................... 11

*New York v. Nat'l Sci. Found.*,
    793 F. Supp. 3d 562 (S.D.N.Y. 2025)............................................................................... 8

*New York v. DHS*,
    969 F.3d 42 (2d Cir. 2020)............................................................................................. 36

*Nken v. Holder*,
    556 U.S. 418 (2009)...................................................................................................... 39

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004)........................................................................................................ 29

*NRDC v. Dep't of Interior*,
    410 F. Supp. 3d 582 (S.D.N.Y. 2019)........................................................................ passim

*NRDC v. Wheeler*,
    367 F. Supp. 3d 219 (S.D.N.Y. 2019)............................................................................. 16

*Oneida Nation of New York v. Cuomo*,
    645 F.3d 154 (2d Cir. 2011)............................................................................................ 9

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*,
    769 F.3d 105 (2d Cir. 2014)............................................................................................ 9

*Padula v. Webster*,
    822 F.2d 97 (D.C. Cir. 1987) ......................................................................................... 20

*Page v. Oath Inc.*,
    No. 17 Civ. 6990 (LGS), 2018 WL 1474620 (S.D.N.Y. Mar. 26, 2018) ................................ 36

*Physicians Comm. for Responsible Med. v. Vilsack*,
    No. 16-cv-00069-LB, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016)..................................... 21

*Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic,*
    400 U.S. 62 (1970)..................................................................................................... 25

*Pub. Citizen v. Dep't of Health & Human Servs.,*
    795 F. Supp. 1212 (D.D.C. 1992) .............................................................. 18, 21, 23

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods,*
    886 F.2d 419 (D.C. Cir. 1989) .......................................................................... passim

*Pub. Citizen v. U.S. Dep't of Just.,*
    491 U.S. 440 (1989)............................................................................................. 2, 32

*Renne v. Geary,*
    501 U.S. 312 (1991)..................................................................................................... 7

*Robinson v. Overseas Mil. Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994)......................................................................................... 7

*Rodriguez ex rel. Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1999)..................................................................................... 37

*Ruesch v. Commr of Internal Revenue,*
    25 F.4th 67 (2d Cir. 2022) ....................................................................................... 12

*Rynasco v. New York Univ.,*
    63 F.4th 186 (2d Cir. 2023) ....................................................................................... 5

*Sanchez v. Pena,*
    17 F. Supp. 2d 1235 (D.N.M. 1998) .................................................................. 22, 34

*Sanders v. Johnson,*
    No. 19 Civ. 5525 (LJL), 2021 WL 4776357 (S.D.N.Y. Oct. 11, 2021) ..................... 8

*Secured Worldwide LLC v. Kinney,*
    No. 15 Civ. 1761 (CM), 2015 WL 1514738 (S.D.N.Y. Apr. 1, 2015) ....................... 9

*Serv. Emps. Int'l Union Loc. 200 United v. Trump,*
    419 F. Supp. 3d 612 (W.D.N.Y. 2019) ...................................................................... 9

*Sharkey v. Quarantillo,*
    541 F.3d 75 (2d Cir. 2008)....................................................................................... 24

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)............................................................................................. 13, 14

*Stewart v. Metro. Life Ins. Co.*,
No. 21 Civ. 8092 (PGG), 2025 WL 2710112 (S.D.N.Y. Sept. 22, 2025) ................................ 11

*Taylor v. Bernanke*,
No. 13-CV-1013, 2013 WL 4811222 (E.D.N.Y. Sept. 9, 2013) ................................................ 16

*Thomas v. Banks*, No. 24 Civ.,
5138 (JLR), 2026 WL 100753 (S.D.N.Y. Jan. 14, 2026) ........................................................ 13

*Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*,
618 F. Supp. 2d 256 (E.D.N.Y. 2009) ...................................................................................... 38

*Trump v. Deutsche Bank AG*,
943 F.3d 627 (2d Cir. 2019)....................................................................................................... 9

*United States Gypsum Co. v. Muszynski,*
161 F.Supp.2d 289 (S.D.N.Y.2001)......................................................................................... 25

*United States v. Nixon*,
418 U.S. 683 (1974).................................................................................................................. 33

*Valine v. United States Dep't of Lab.*,
No. 25 Civ. 8260 (LTS), 2025 WL 3274543 (S.D.N.Y. Oct. 14, 2025).................................. 35

*Wang v. Bank of Am. Corp.*,
No. 23 Civ. 4508 (VSB), 2025 WL 2611410 (S.D.N.Y. Sept. 10, 2025)................................ 37

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir. 2021) ....................................................................................................... 8

*Webster v. Doe*,
486 U.S. 592 (1988)............................................................................................................ 19, 20

*Whitman v. American Trucking Ass'ns Inc.*,
531 U.S. 457 (2001)............................................................................................................ 24, 25

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008)..................................................................................................................... 8, 9

*Young v. Env't Prot. Agency*,
106 F.4th 56 (D.C. Cir. 2024).................................................................................................. 34

*Young v. EPA*,
No. CV 21-2623 (TJK), 2022 WL 474145 (D.D.C. Feb. 16, 2022)........................................ 38

x

## Regulations

41 C.F.R. § 102-3.25 ................................................................................................ 3
41 C.F.R. § 102-3.50 ................................................................................................ 3
41 C.F.R. § 102-3.60 ................................................................................................ 3
41 C.F.R. § 102-3.165 ............................................................................................ 30
41 C.F.R. § 102-3.130(a) .............................................................................. 3, 26, 34

## Rules

Fed. R. Civ. P. 12(b) ...................................................................................... passim
Fed. R. Civ. P. 65(c) .............................................................................................. 40

## Statutes

5 U.S.C. § 701 ....................................................................................... 10, 19, 20
5 U.S.C. § 702 ....................................................................................... 10, 19, 24
5 U.S.C. § 1001 ........................................................................................ 2, 3, 29
5 U.S.C. § 1002 ....................................................................................................... 2
5 U.S.C. § 1004 ....................................................................................... 3, 21, 22
5 U.S.C. § 1008 ....................................................................................................... 3
5 U.S.C. § 1009 ................................................................................. 2, 3, 12, 29
5 U.S.C. § 553(b)(3)(A) ...................................................................................... 20
5 U.S.C. §§ 551-706 ....................................................................................... 19, 29
5 U.S.C. §§ 1001-1014 ...................................................................................... 2, 29
28 U.S.C. § 1391(e) .............................................................................................. 35
28 U.S.C. § 1361 .................................................................................................... 6

## Constitutions

U.S. Const. Art. III § 2 ........................................................................................ 11

Defendants Donald Trump, in his official capacity, Todd Blanche, in his official capacity (the "Attorney General" or "AG")[1], the Department of Justice ("DOJ"), the Religious Liberty Commission ("RLC"), and Mary Margaret Bush, in her official capacity (together, "Defendants"), by their attorney Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the motion for a preliminary injunction (ECF No. 39) filed by plaintiffs The Interfaith Alliance, Muslims for Progressive Values ("MPV"), the Sikh American Legal Defense and Education Fund ("SALDEF"), Hindus for Human Rights ("HHR") (the "Organization Plaintiffs"), and Paul Brandeis Raushenbush (collectively, "Plaintiffs"), and in support of Defendants' motion to dismiss the Complaint (ECF No. 4).

## PRELIMINARY STATEMENT

On May 1, 2025, by Executive Order, President Trump established the Religious Liberty Commission to assist the administration's objectives in protecting religious liberty in America. The President appointed 13 members to the RLC, and over the course of the past year, the RLC has held seven public meetings and is now in the process of drafting a final report that it intends to present to the President.  Plaintiffs, however, object to the RLC members chosen and appointed by the President and to how the RLC has been operating.  Now, almost one year after the RLC's work began, Plaintiffs ask this Court to enjoin the RLC from issuing its final report.  Plaintiffs claim that Defendants have violated the Federal Advisory Committee Act ("FACA") by failing to publish all required documents and because the membership of the RLC is not fairly balanced.

Plaintiffs' claims, however, suffer from several fatal procedural and substantive defects. First, all of Plaintiffs' claims regarding the failure to publish certain documents are moot because all documents required to be released under the FACA are publicly available.  Second, the Court

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Attorney General Todd Blanche is automatically substituted as a party for former Attorney General Pamela Bondi.

lacks subject matter jurisdiction over this action because Plaintiffs lack standing and because Plaintiffs' challenges to the makeup of the RLC membership are non-justiciable.  Third, the Complaint should be dismissed because Plaintiffs fail to state any claims under the Administrative Procedure Act ("APA") or the Mandamus Act.  And finally, the Court should deny injunctive relief here because Plaintiffs have failed to show a likelihood of success on the merits, irreparable harm, or that the public interest weighs in favor of an injunction.

Accordingly, the Court should deny Plaintiffs' motion for a preliminary injunction and dismiss the Complaint in its entirety.

## STATUTORY AND FACTUAL BACKGROUND

### I.    The Federal Advisory Commission Act

In 1972, Congress enacted the FACA, 5 U.S.C. §§ 1001-1014, "to assess the need for the 'numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch.'"  *Pub. Citizen v. DOJ*, 491 U.S. 440, 445-46 (1989) (citing 5 U.S.C. § 1002 (previously codified at 5 U.S.C. App. § 2(a))).  It "aims to keep Congress and the public informed about the number, purpose, membership, and activities of groups established or utilized to offer advice or recommendations to the President or to officers or employees of the federal government" and to "ensure the even-handedness of such advice."  Steven P. Croley & William F. Funk, *The Federal Advisory Committee Act and Good Government*, 14 Yale J. on Reg. 451, 452 (1997); *see also* 5 U.S.C. § 1001(2).

To achieve these goals, the FACA imposes some procedural requirements.  For example, FACA advisory committees generally must give advance notice in the Federal Register of any meetings, hold their meetings "open to the public," and permit interested persons to "attend, appear before, or file statements" with the committee.  5 U.S.C. § 1009(a).  In addition, the FACA requires

advisory committees to make their transcripts, minutes, and other records publicly available.  *See id.* §§ 1009(b), (c), 1010(b).  And each advisory committee must be "fairly balanced in terms of the points of view represented and the functions to be performed," and "not be inappropriately influenced by the appointing authority or by any special interest."  *Id.* § 1004(b) (2), (3).

FACA advisory committees may be established by Congress, the President, or agencies. *See id.* §§ 1004, 1008(a); 41 C.F.R. § 102-3.50.  Their purpose is "to obtain advice or recommendations for the President[,] . . . agencies or [federal] officers."  5 U.S.C. §1001(2)(A). There are two types of advisory committees: discretionary advisory committees, which are established under agency authority; and non-discretionary advisory committees, which are authorized or required by an act of Congress or established by Presidential directive.  41 C.F.R. §§ 102-3.25, 102-350.  Regardless of type, however, the purpose of a FACA committee must be "solely [] advisory" in nature; the responsibility for taking action or devising policies with respect to the matters upon which an advisory committee reports or makes recommendations "shall be made solely by the President or an officer of the Federal Government."  5 U.S.C. § 1008(b).

FACA is silent as to the qualifications of committee members and what criteria should be used for member selection and retention.  Indeed, the U.S. General Services Administration's ("GSA") regulations implementing the FACA provide that "committee members serve at the pleasure of the appointing or inviting authority."  41 C.F.R. § 102-3.130(a).  While the FACA regulations describe considerations for fairly balanced membership in the context of discretionary committees, there are no such guidelines for non-discretionary committees.  *See id.* § 102-3.60.

## II.    The Religious Liberty Commission

### A.    Executive Order No. 14291

On May 1, 2025, President Trump issued an Executive Order (the "E.O.") creating the

RLC.  Proclamation No. 14291, 90 Fed. Reg. 19417 (May 1, 2025) [hereinafter "E.O. 14291"].  According to the E.O., the RLC has two goals.  *Id.*  First, it will "produce a comprehensive report on the foundations of religious liberty in America, the impact of religious liberty on American society, current threats to domestic religious liberty, strategies to preserve and enhance religious liberty protections for future generations, and programs to increase awareness of and celebrate America's peaceful religious pluralism."  *Id.*  Second, the RLC is designed to "advise the White House Faith Office and the Domestic Policy Council on religious liberty policies of the United States."  *Id.*  The E.O. directs the RLC to recommend "steps to secure domestic religious liberty by executive or legislative actions as well as identify[] opportunities for the White House Faith Office . . . to further the cause of religious liberty around the world."  *Id.*

Pursuant to the E.O., the President shall nominate 14 members from "various sectors of society," reflecting "diverse perspectives on how the Federal Government can defend religious liberty for all Americans" to serve on the RLC.  *Id.*  The E.O. also designates three *ex officio* members: the AG, the Secretary of Housing and Urban Development, and the Assistant to the President for Domestic Policy.  *Id.*  The E.O. requires the establishment of three separate "subcomponent[s]" to "advise members of the Commission," including an Advisory Board of Religious Leaders, Advisory Board of Lay Leaders, and Advisory Board of Legal Experts.  *Id.*

**B.      The RLC and its Activities to Date**

On May 1, 2025, the same day he issued the E.O., President Trump announced his selection of the RLC Commissioners.  *See* The White House, *President Trump Announces Religious Liberty Comm'n Members*, May 1, 2025, *available at* https://www.whitehouse.gov/briefings-statements/2025/05/president-trump-announces-religious-liberty-commission-members/

4

[hereinafter *Trump Announces RLC Members*].[2]  The Commissioners are: Texas Lt. Governor Dan Patrick, Dr. Ben Carson, Ryan T. Anderson, Bishop Robert Barron, Cardinal Timothy Dolan, Pastor Franklin Graham, Allyson Ho, Dr. Phil McGraw, Eric Metaxas, Kelly Shackelford, Rabbi Meir Soloveichik, and Pastor Paula White.[3]  Declaration of Mary Margaret Bush ("Bush Decl.") ¶ 5.  The RLC's Director and Designated Federal Officer ("DFO") is Mary Margaret Bush.  *Id.* ¶ 1.  Between June 2025 and April 2026, the RLC held seven hearings, which were publicly announced in the Federal Register, open to the public, and live-streamed.  *Id.* ¶¶ 6-12.  Each hearing was also recorded and posted onto the public DOJ website.  *See Videos*, U.S. DEP'T OF JUST., https://www.justice.gov/news/videos?search_api_fulltext=+religious+liberty+commission&start_date=&end_date=&sort_by=search_api_relevance.  The RLC recently held its seventh and final hearing on April 13, 2026, and intends to hold another meeting in or about May 2026 to discuss a working draft of the final report.  Bush Decl. ¶¶ 12, 15.  Once finalized, the RLC will present its report to the President.  *Id.* ¶ 16.

As of April 28, 2026, all (i) notices of RLC meetings; (ii) RLC meeting agendas; (iii) videos and written transcripts of RLC meetings; (iv) minutes of RLC meetings; and (v) written comments submitted by the public prior to RLC hearings and provided to the Commissioners, are publicly available on the RLC's website or published in the Federal Register.  *Id.* ¶¶ 6-13.  The RLC intends to circulate a draft of the final report for public comment at least 15 days prior to the public meeting to be held in or about May 2026.  *Id.* ¶ 15.

### III.    The Complaint and Motion for a Preliminary Injunction

On February 9, 2026, Plaintiffs commenced this action.  ECF No. 4, ("Compl.").  Plaintiffs

---

[2] The Court may take "judicial notice of documents from official government websites." *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023).

[3] President Trump originally appointed a thirteenth Commissioner, but she is no longer serving.

claim that the RLC has violated: (1) the FACA's requirement that an advisory committee be "fairly balanced in terms of the points of view represented," *id.* ¶¶ 49-61; *see also id.* ¶¶ 62-72, and (2) the FACA's notice, transparency, and records access requirements, *see id.* ¶¶ 73-82. Plaintiffs claim that the RLC did not publicly disclose all materials required to be disclosed under the FACA in advance of or at the RLC hearings, which "made it more difficult for the interested public, including Plaintiffs, to prepare to attend and participate in the public meetings and to stay abreast of the Commission's work." *Id.* ¶ 82. In addition, Plaintiffs claim that the RLC's "lack of fair balance has [] limited Plaintiffs' ability and right to have a representative voice on the Commission on an issue with which Plaintiffs are engaged." *Id.* ¶ 83. Specifically, Plaintiffs allege that the RLC does not represent a fair balance of viewpoints because "all but one" of its members "publicly identify as Christian" and thus only represents the "Judeo-Christian" perspective. *Id.* ¶¶ 3, 7, 50-61. Plaintiffs assert that these alleged violations of the FACA by the DOJ and AG give rise to claims under the APA, *id.* ¶¶ 100-13, 125-30, and that the alleged violations of FACA by Defendants Trump, RLC, and Bush merit a writ of mandamus pursuant to 28 U.S.C. § 1361, *id.* ¶¶ 114-24; 131-35. Plaintiffs seek an Order declaring that the RLC violates the FACA, directing Defendants to "employ good faith efforts to appoint a properly qualified representative from the excluded viewpoints," enjoining Defendants from publishing a final report without a disclaimer stating that the report was produced in violation of the FACA, and directing Defendants to immediately release all materials prepared for the RLC. *Id.* at 40-41.

On April 2, 2026, Plaintiffs filed a motion for a preliminary injunction ("PI Motion"). ECF Nos. 39, 40 ("Pl. Br."). In support, Plaintiffs again argue that the RLC failed to comply with the FACA's transparency and record requirements and is not "fairly balanced in terms of the points of view represented." Pl. Br. at 11-17. Plaintiffs seek several forms of preliminary injunctive relief,

6

including an order: (1) requiring "disclosure of the required Commission documents and other materials," (2) requiring "Defendants to open the Commission's records for inspection, and to provide Plaintiffs with access to the internal Commission materials they would have received if they were appropriately represented on the Commission," and (3) enjoining "Defendants from publishing the Commission's report." *Id.* at 20.

## LEGAL STANDARDS

### I.  Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quotation marks omitted). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the existence of subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Giammatteo v. Newton,* 452 Fed. Appx. 24, 27 (2d Cir. 2011). A court should "presume that [it] lack[s] jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (cleaned up). In considering whether a plaintiff has met this burden, the court will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in

favor of the non-movant, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (internal citation and quotation omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When adjudicating a motion to dismiss under Rule 12(b)(6), the court considers not only the well-pleaded allegations of the complaint but documents incorporated by reference and 'matters of which judicial notice may be taken.'" *Sanders v. Johnson*, No. 19 Civ. 5525 (LJL), 2021 WL 4776357, at *1 (S.D.N.Y. Oct. 11, 2021) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## II.    Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *New York v. Nat'l Sci. Found.*, 793 F. Supp. 3d 562, 575 (S.D.N.Y. 2025); *accord Winter v. NRDC*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To be entitled to this extraordinary remedy, a movant must clearly demonstrate: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, [] (3) public interest weighing in favor of granting the injunction," and (4) "that the balance of equities tips in his or her favor." *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (quotation marks and footnotes omitted); *accord Care One, LLC v. Nat'l Lab. Rels. Bd.*, 166 F.4th 335, 343 (2d Cir. 2026). "When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir.

8

2021).[4]

## ARGUMENT

The Court should dismiss the Complaint because certain claims are moot, this Court lacks

subject matter jurisdiction over all claims, and the Complaint fails to state any claims.  Plaintiffs

are also not entitled to a preliminary injunction because they have not shown that they are likely

to succeed on the merits of their claims, that they will be harmed irreparably absent an injunction,

or that the balance of equities and the public interest weigh in their favor.

## I.    THE COMPLAINT SHOULD BE DISMISSED

### A.  The Court Lacks Subject Matter Jurisdiction

#### i.  Sovereign Immunity Requires Dismissal of Count One

In Count One of the Complaint, Plaintiffs assert a claim under the APA arising from the

---

[4] Plaintiffs argue that a different legal standard applies to preliminary injunction motions, asserting that courts generally grant preliminary injunctions where a plaintiff demonstrates "irreparable harm" and either "(a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party."  Pl. Br. at 10 (quoting *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014)).  However, the court in *Secured Worldwide LLC v. Kinney* observed, "[t]his was the long-standing rule in the Second Circuit *prior* to the Supreme Court's decision in *Winter*."  No. 15 Civ. 1761 (CM), 2015 WL 1514738, at *10 n.4 (S.D.N.Y. Apr. 1, 2015) (emphasis added) (applying the *Winter* standard).  While the Second Circuit has acknowledged "[u]ncertainty" as to whether the Supreme Court intended the *Winter* standard to apply "in all preliminary injunction cases," *Trump v. Deutsche Bank AG*, 943 F.3d 627, 640, 640 n.3 (2d Cir. 2019), *vacated and remanded on other grounds* 591 U.S. 848 (2020), Plaintiffs do not dispute that "[a] plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge 'governmental action taken in the public interest pursuant to a statutory or regulatory scheme,'" *Otoe-Missouria Tribe of Indians*, 769 F.3d at 110; Pl. Br. at 11.  Further, the Second Circuit has rejected Plaintiffs' argument that the lower "serious questions" standard applies when the challenged government action concerns executive action allegedly taken in violation of, and not "pursuant to," a statutory or regulatory scheme.  *See Deutsche Bank AG*, 943 F.3d at 638; Pl. Br. at 11.  Similarly, in *Serv. Emps. Int'l Union Loc. 200 United v. Trump*, which involved a challenge to two Executive Orders, the court applied the higher likelihood-of-success standard, explaining that it was "unpersuaded by Plaintiffs' new argument that the fair-ground-for-litigation standard applies in this case because the [challenged] Executive Orders allegedly conflict with" two statutes.  419 F. Supp. 3d 612, 617 (W.D.N.Y. 2019), *aff'd*, 975 F.3d 150 (2d Cir. 2020).  The court explained that "[a]ccepting this argument would require the Court to put the proverbial cart before the horse by making a merits determination before ascertaining the applicable preliminary injunction standard," *id.*, and further observed that the Second Circuit has previously found the fair-ground-for-litigation standard inapplicable "notwithstanding the plaintiff's allegation that the state's actions conflicted with various federal statutes," *id.* (citing *Oneida Nation of New York v. Cuomo*, 645 F.3d 154 (2d Cir. 2011)).  Indeed, the only cases cited by Plaintiffs in support of their argument that the "serious questions" standard applies here were decided before *Winter*, and in any event, are inapposite.  *See* Pl. Br. at 11 (citing *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995), but *Able* applied the "likelihood of success" standard; citing *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1326, 1339 (2d Cir. 1992), but that decision was vacated on appeal).

RLC's allegedly unbalanced membership.  Compl. ¶¶ 100-13, 125-30.  However, Congress has waived sovereign immunity under the APA only for lawsuits challenging "agency action," and the authority to appoint and remove the RLC's Commissioners is vested exclusively in the President. As such, Count One should be dismissed for lack of subject matter jurisdiction.

In Section 702 of the APA, Congress enacted a "limited waiver of the federal government's sovereign immunity" for claimed injuries caused by "agency action."  *Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (quoting 5 U.S.C. § 702); *accord Mosseri v. Woodstock Hous. Dev. Fund-Corp.*, No. 18 Civ. 9431 (VSB), 2019 WL 2287964, at *2 (S.D.N.Y. May 28, 2019) ("The APA is a limited waiver of sovereign immunity, allowing for judicial review of the final administrative action of a federal agency[.]") (internal emphasis omitted).  As such, the Government's waiver of sovereign immunity under the APA "applies only to agencies."  *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005).

"[T]he President is not an 'agency' within the meaning of the APA."  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (quoting *Dalton v. Specter*, 511 U.S. 462, 469 (1994)); *see also* 5 U.S.C. § 701(b).  Accordingly, "the APA does not allow courts to review the President's actions."  *Lunney*, 319 F.3d at 554.  For this reason, in *Lunney v. United States*, the Second Circuit affirmed the dismissal of an APA claim alleging that the Navy Medal of Honor should have been awarded to a different recipient.  *Id.* at 551, 560.  The Court explained that because "matters pertaining to the Medal of Honor rests with the President of the United States who is not an 'agency' within the meaning of the APA and whose actions may therefore not be challenged under it . . . Plaintiff has failed to establish that the federal government waived its sovereign immunity under the APA as to his claim."  *Id.* at 551 (internal quotation marks omitted); *see also Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) (President's actions "are not reviewable for abuse of

10

discretion under the APA").

The E.O. establishing the RLC and the RLC Charter clearly state that the RLC "shall be composed of up to 14 members *appointed by the President*." E.O. 14291 (emphasis added); The Religious Liberty Commission Charter, May 16, 2025, ¶ 12, *available at* https://gsa-geo.my.salesforce.com/sfc/p/#t0000000Gyj0/a/SJ000007izF4/lKdebOLMPrYJiXP4xuGsRh2Wh 0 (emphasis added). The E.O. grants no authority to the DOJ or any DOJ official with respect to the selection of RLC members. *See id.* Plaintiffs acknowledge this, as the Complaint alleges that "*President Trump* [] appointed the members." Compl. ¶ 53 (emphasis added) (alleging that it "is evident from the President's choice of Commission members" that the RLC focuses on the "Judeo-Christian" perspective). The Complaint also includes a citation to President Trump's remarks to the RLC on September 8, 2025, in which he acknowledges having chosen the RLC Commissioners. *See id.* ¶ 53 n.32; *see also Trump Announces RLC Members*. Accordingly, Plaintiffs have failed to allege "agency action" with respect to the membership of the RLC, and their APA claim should therefore be dismissed as barred by sovereign immunity.

### ii. The Document Claims are Moot

A case or claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *NYC Employees' Retirement Sys. v. Dole Food Co.,* 969 F.2d 1430, 1433 (2d Cir.1992) (internal quotation marks omitted). "When this occurs, the Constitution's case or controversy requirement, U.S. Const. Art. III, § 2, is not satisfied and a federal court lacks subject matter jurisdiction." *Id.*; *Stewart v. Metro. Life Ins.*, No. 21 Civ. 8092 (PGG), 2025 WL 2710112, at *5 (S.D.N.Y. Sept. 22, 2025) ("A Rule 12(b)(1) motion is the proper vehicle for raising a mootness challenge."). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d

11

380, 386 (2d Cir. 1983).  Thus, "where a party has obtained all the relief she could receive on the claim through further litigation," a court must dismiss the claim for lack of subject matter jurisdiction.  *Ruesch v. Comm'r of Internal Revenue*, 25 F.4th 67, 70 (2d Cir. 2022) (internal citation omitted).

Plaintiffs allege that Defendants failed to make available to the public the "[r]ecords, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for or by" the RLC, as required by 5 U.S.C. § 1009(b). Compl. ¶¶ 128, 134.  Specifically, Plaintiffs allege that Defendants did not make available to the public the following materials: witness lists, meeting agendas, complete meeting transcripts, complete and accurate videos of the meetings, witness statements, meeting minutes, and other documents made available to the RLC commissioners.  *Id.* ¶¶ 76-81.

All of these materials are publicly available.  Meeting agendas were published in the Federal Register in advance of each RLC meeting, *see* Bush Decl. ¶¶ 6-12 (citing the Federal Register announcements), and witness lists, certified minutes, full transcripts, and witness statements for each RLC meeting are publicly available on the RLC's website, *id.* (providing website links).  Moreover, video recordings and photographs of each meeting have been published online, *see id.*, and a complete set of all written public comments provided to the RLC Commissioners and all other documents provided to the RLC are publicly available, *see id.* ¶ 13.

Plaintiffs seek an Order directing Defendants to immediately release all materials prepared for the RLC, Compl. ¶¶ 125-135, but the RLC has already publicly released all of those records. *See supra* at 12; 5 U.S.C. § 1009(b).  Accordingly, as Plaintiffs have obtained all of the relief which they seek with respect to their document claims (Counts Three and Four), the Court should dismiss those claims as moot.  *See Citizens for Resp. & Ethics in Washington v. Duncan*, 643 F.

Supp. 2d 43, 51 (D.D.C. 2009) (compliance with FACA's document requirements rendered claim moot); *see also, e.g.*, *Thomas v. Banks*, No. 24 Civ. 5138 (JLR), 2026 WL 100753, at *3 (S.D.N.Y. Jan. 14, 2026) (claims are moot when "there is no relief left for the Court to grant") (citing cases).[5] Moreover, because the RLC will have another meeting in or about May 2026 to solicit public feedback on the working draft of the RLC's report, any alleged injury arising from the allegedly tardy release of certain materials is also moot because Plaintiffs will have a meaningful opportunity to review and respond to these materials in advance of, and at, the next meeting. *See Byrd v. EPA*, 174 F.3d 239, 244 (D.C. Cir. 1999) (plaintiff's claim that FACA committee failed to timely disclose meeting notes "would be mooted if [the agency] convened another panel . . . and provided [plaintiff] with all panel documents either before or at the meeting").[6]

### iii.  Plaintiffs Lack Standing

All claims should be dismissed because Plaintiffs do not have standing.  Standing is necessary for parties to establish the existence of an Article III case or controversy and, thus, to invoke the jurisdiction of the federal courts. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408-09 (2013).  To establish jurisdiction, a plaintiff must plead facts that establish the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560, namely, that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Organizations can establish standing in one of two ways.  They can sue on behalf of their members (known as "associational standing") or they

---

[5] Plaintiffs also request a "*Vaughn* index" listing materials "withheld from production for any reason," Compl. at 41, but as the RLC did not withhold any materials on grounds of any privilege or exemption, this request for relief should also be dismissed as moot.  *See* Bush Decl. ¶ 14.

[6] Plaintiffs also seek an Order declaring that the "DOJ and [AG's] administration of the [RLC] is arbitrary and capricious and contrary to law," Compl. at 40-41, but "[a] declaratory judgment may be rendered only to resolve some *actual* controversy," *In re Allied Artists Pictures Corp.*, 71 B.R. 445, 448 (S.D.N.Y. 1987), and here there is none.

can "have standing in [their] own right" (known as "organizational standing"). *N.Y. Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). All Plaintiffs must show that the injury is traceable to the challenged conduct and can be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338.

As set forth below, the Organization Plaintiffs have failed to establish standing because they have not plead an injury-in-fact with respect to any alleged diversion of resources, and all Plaintiffs have failed to establish standing because they have not alleged any injuries that are fairly traceable to Defendants' alleged conduct.

> 1. The Organization Plaintiffs' Alleged "Diversion of Resources" Injuries are not Injuries-in-Fact Sufficient to Confer Standing

The Organization Plaintiffs assert that they have suffered harm because Defendants' alleged FACA violations "imped[ed]" the Organization Plaintiffs' missions and "forc[ed] them to divert resources in response." Compl. ¶ 83. Plaintiffs further claim that the alleged lack of access to RLC records "has made it more difficult . . . to prepare to attend and participate in the public meetings and to stay abreast of the Commission's work." *Id.* ¶ 82; *see also id.* ¶¶ 90, 95. However, these allegations of harm do not constitute injuries-in-fact sufficient to confer standing.

While an organizational plaintiff has standing "where the defendant's conduct or policy interferes with or burdens [the] organization's ability to carry out its usual activities" or compels the organization "to act with a consequent drain on its resources," *Citizens for Responsibility & Ethics in Wash. v. Trump,* 276 F. Supp. 3d 174, 190 (S.D.N.Y. 2017) (internal quotation marks and alteration omitted) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)), an organization's "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected" so as to confer standing, *Ctr. for Law & Educ. v. Dep't of Educ.*,

14

396 F.3d 1152, 1162 n.4 (D.C. Cir. 2005) (internal quotation marks omitted).

The leading case on organizational injury, *Havens Realty Corp. v. Coleman*, demonstrates the distinction between a burden on an organization's activities (which confers standing) and a burden on its social or advocacy interests (which does not). In *Havens*, the plaintiff, a non-profit fair housing organization, alleged that the defendant's racially discriminatory steering practices "frustrated . . . its efforts to assist equal access to housing through counseling and other referral services [and it] has had to devote significant resources to identify and counteract" those practices as a result. 455 U.S. at 379. The Supreme Court held that these allegations "constitute[] far more than simply a setback to the organization's abstract social interests" as the defendant's actions "have perceptibly impaired [the organization's] ability to provide counseling and referral services." *Id.* Accordingly, the organization had suffered an injury in its own right. *Id.*

Here, in contrast, Plaintiffs plead no specific facts demonstrating that Defendants' actions burdened their *activities* (as opposed to their advocacy interests) or forced them to spend resources to avoid such a burden. Plaintiffs conclusorily allege that Defendants' actions have required them to "divert resources," Compl. ¶¶ 83, 97-98, that their missions "ha[ve] been compromised," *id.* ¶¶ 88, 90, and that Plaintiffs would be "better able to monitor its activities, attend its meetings, participate in those meetings to advance its interests to the extent possible, and educate its stakeholders," if the RLC were operated transparently, *id.* ¶¶ 90, 92, 95. But Plaintiffs are advocacy organizations that would reasonably be expected to be engaging in such activities regardless of any alleged FACA violations. *See id.* ¶¶ 14 (Interfaith Alliance "is an organization dedicated to advocating for religious freedom" and "has worked tirelessly" since 1994 to "protect[] religious liberty for all"), 16 (MPV "advocates . . . for the separation of religion and state"), 17 (SALDEF "is an organization dedicated to . . . upholding . . . religious freedom for all Americans"),

15

18 (HHR "is an organization that advocates for pluralism and civil and human rights"); ¶¶ 90, 92, 95 (the Organization Plaintiffs have a "significant interest in the Commission's activities"); *see also* Declaration of Paul Brandeis Raushenbush (ECF No. 41) ("Raushenbush Decl.") ¶¶ 2-8 (Interfaith Alliance's "mission" includes ensuring "freedom[] of belief and religious practice"); Declaration of Ani Zonneveld (ECF No. 42) ¶¶ 2-6 ("To accomplish its mission," MPV "engages with . . . government entities on issues such as the freedom to worship" and actively monitors issues relating to "religious freedom"); Declaration of Ria Chakrabarty (ECF No. 43) ¶¶ 2-4 (HHR "advocates for pluralism" and "has a significant interest in the Religious Liberty Commission's activities"); Declaration of Kiran Kaur Gill (ECF No. 44) ¶¶ 2-8 (SALDEF's "mission" is to "uphold[] . . . religious freedom for all Americans").

To establish standing, Plaintiffs must show "harms *beyond* interference with their ability to advocate on an issue of interest." *Taylor v. Bernanke*, No. 13 Civ. 1013, 2013 WL 4811222 (ARR), at *11 (E.D.N.Y. Sept. 9, 2013) (emphasis added). The Complaint fails to do so, as it alleges only that the Organization Plaintiffs have been forced to pay close attention to an issue and a Commission about which they had already expressed deep interest. Nor have Plaintiffs alleged the diversion of any specific resources beyond their normal expenditures, or involvement in any activities outside the scope of their usual operations. This is insufficient to confer standing.[7] *See NRDC v. Wheeler*, 367 F. Supp. 3d 219, 230 (S.D.N.Y. 2019) (no standing where plaintiff did not allege "that it diverted any other resources from its activities (specific or otherwise)" because of advisory committee); *Ctr. for Law & Educ.*, 396 F.3d at 1161-62 (government action that forced

---

[7] Plaintiffs further allege that after a final report is issued, Plaintiffs will "need to divert further resources to advocate for pluralistic democracy and fight back against extremists." Compl. ¶¶ 97, 98. These allegations are entirely conclusory and speculative given that the report has not been issued yet and because the RLC's mandate is to advise the President on how to protect religious freedom so that Americans can practice their faith "without fear of discrimination." E.O. 14291. And again, such allegations fail to plead an injury-in-fact because they concern precisely the types of issues and advocacy in which these organizations are already typically engaged.

16

organizations to adopt more costly lobbying strategies did not have standing); *Elec. Privacy Info. Ctr. v. Dep't of Educ.*, 48 F. Supp. 3d 1, 23-24 (D.D.C. 2014) (organization's "expenditure of funds to promote its legislative agenda through research, education, outreach . . . , and litigation is a normal and critical part of its mission and operations"); *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 542 (S.D.N.Y. 2006) (organization lacked standing where its "entire reason for being is to pursue the sort of advocacy . . . that it has pursued in this case"); *cf. NRDC v. DOI*, 410 F. Supp. 3d 582, 595 (S.D.N.Y. 2019) (finding standing where plaintiffs "provide[d] concrete examples of . . . increased monitoring efforts, which include[d] sending more members to meetings, spending extra time preparing staff for meetings, and resorting to FOIA to obtain" FACA records).

2.  Plaintiffs Do Not Adequately Allege the Causation Element of Standing

In addition, all Plaintiffs lack standing because they have not adequately alleged the causation requirement of Article III.  According to Plaintiffs, the RLC's "skewed and imbalanced Commission membership and failure to comply with transparency and recordkeeping requirements" has caused Plaintiffs to suffer harm.  Compl. ¶¶ 83, 88.  But as explained above, the Organization Plaintiffs have not pleaded that Defendants caused them to spend any additional time or resources beyond their normal activities in furtherance of their organizational missions.  *See supra* at 14-17.  In addition, as Plaintiff Raushenbush does not have a right to be appointed to the RLC, *see infra* at 34-35, he cannot allege that Defendants caused him harm by not selecting him.

Moreover, to connect Defendants' alleged FACA violations to the alleged injuries, Plaintiffs assume a highly speculative chain of events.  Plaintiffs assume that because the religious viewpoints of their constituents are allegedly not represented on the RLC, the RLC's report will be "used to justify discrimination against religious minorities and other minority communities" and it may be "used to facilitate the encroachment of the Commission's 'Judeo-Christian'

17

viewpoint into the government, eroding the separation between church and state." *Id.* ¶ 98. But it is well-established that litigants "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416; *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

The Organization Plaintiffs similarly allege that their ability to carry out their respective missions "has been compromised by the [RLC's] skewed and imbalanced Commission membership and failure to comply with transparency and recordkeeping requirements." Compl. ¶ 88. Yet the Complaint fails to allege how a non-profit's advocacy would be "compromised" by a commission tasked with issuing a report on religious liberty, particularly when the report has not yet been published. Plaintiffs offer only overblown speculation that a report, which has not been finalized and will be subject to public comment, *see* Bush Decl. ¶ 15, may be detrimental to some religious groups in the United States. Such a speculative chain of events is insufficient to satisfy Article III's causation requirement. *See, e.g.*, *Pub. Citizen v. HHS*, 795 F. Supp. 1212, 1214 (D.D.C. 1992) (theory that "unbalanced membership of [committee] causes it to make certain biased recommendations, which in turn cause government agencies to adopt policies favoring the petroleum industry, which in turn cause the appellants to be injured as consumers and citizens" is a "speculative chain of events . . . simply too attenuated to amount to injury in fact").

In sum, Plaintiffs have failed to establish that they have suffered an injury-in-fact fairly traceable to Defendants' actions. Accordingly, Plaintiffs lack standing to pursue their claims.

### iv. Counts One and Two Should Be Dismissed as Non-Justiciable

Plaintiffs' APA claim that RLC violated the requirement that a commission be fairly

18

balanced is non-justiciable.  Congress has not provided any meaningful standards (in FACA or elsewhere) for adjudicating these claims.  As such, to review them, the Court would need to arbitrarily substitute its own policy judgment for that of the agency.  Because policymaking is the province of the other branches of government, the Court should leave these decisions to the Executive, in whose discretion they are properly committed under the APA, and dismiss these claims for lack of subject matter jurisdiction.

The APA, 5 U.S.C. §§ 551-706, establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by either agency action or an agency's failure to act.  *See* 5 U.S.C. §§ 702, 706(1)-(2).  The APA's waiver of sovereign immunity, however, is limited.  It does not apply in circumstances where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or "agency action is committed to agency discretion by law," *id.* § 701(a)(2).

In *Heckler v. Chaney*, the Supreme Court articulated the fundamental inquiry for the application of section 701(a)(2):

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if *the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion*.  In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely.

470 U.S. 821, 830 (1985) (emphasis added); *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (section 701(a)(2) applies "where 'statutes are drawn in such broad terms that in a given case there is no law to apply'") (quoting S. Rep. No. 79-752, at 26 (1945)), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Under *Heckler*, the starting point of any analysis under section 701(a)(2) is whether there is a "meaningful standard" provided in the governing statute.  *Lunney*, 319 F.3d at 558; *see also Webster v. Doe*, 486 U.S. 592, 600 (1988) (application of section 701(a)(2) "requires careful examination of the statute on

19

which the claim of agency illegality is based").

Where the statute does not provide any judicially manageable standard, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988) (per curiam). However, "general statements of policy," 5 U.S.C. § 553(b)(3)(A), which are prospective and do not grant rights or impose obligations, are not treated as binding norms for purposes of identifying "law to apply" in the section 701(a)(2) context. *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (citation omitted).

No review is possible where the relevant statute is so broadly drawn that it does not provide a reviewing court any criteria for evaluating the agency's exercise of its discretion. *See Heckler*, 470 U.S. at 830; *see also, e.g.*, *Webster*, 486 U.S. at 600 (no criteria provided to evaluate exercise of authority to remove employees whenever the "Director shall *deem* such termination necessary or advisable in the interests of the United States") (citation omitted); *Claybrook v. Slater*, 111 F.3d 904 (D.C. Cir. 1997) (agency official's power to adjourn an advisory committee meeting for a reason "in the public interest" is not reviewable). In addition, review is not permitted where the agency decision "involves a complicated balancing of a number of factors which are peculiarly within its expertise," including what "best fits the agency's overall policies." *Lincoln*, 508 U.S. at 191, 193 (quoting *Heckler*, 470 U.S. at 831); *see, e.g.*, *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (agency's refusal to reconsider a prior decision based on an alleged "material error" was unreviewable due to the "impossibility of devising an adequate standard of review for such agency action"); *Nat'l Fed'n of Fed. Emps. v. United States*, 905 F.2d 400, 405-06 (D.C. Cir. 1990) (no review where statute "sets forth nine specific criteria to be considered" whose subject matter is not "judicially manageable").

20

Count One of the Complaint asks the Court to review whether the RLC violates FACA's "fair balance" provision, which directs the President when creating an advisory committee to ensure that "the membership of the advisory committee [is] fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b), (c); *see* Compl. ¶ 108. This claim is non-justiciable because Congress has not provided the courts with meaningful standards for determining what constitutes a "fair balance." *See Microbiological*, 886 F.2d at 431 (Silberman, J., concurring).[8] The FACA does not define "fairly balanced," nor does it specify how a "fairly balanced" membership on an advisory committee is to be achieved.   Indeed, "even before the points of view on an advisory committee can be balanced at all—'fairly' or otherwise—it must first be determined *which* points of view should be balanced." *Microbiological*, 886 F.2d at 426 (Silberman, J., concurring).  And there is no "principled basis for a federal court to determine which among the myriad points of view deserve representation on particular advisory committees." *Id.*  The "relevant points of view on issues to be considered by an advisory committee are virtually infinite." *Id.*; *Doe*, 862 F. Supp. at 1430 ("For the Court to become entangled in determining which viewpoints must be represented is for the Court to arbitrarily substitute its judgment for that of the agency.").

There is similarly no "principled way" to determine whether those views are fairly

---

[8]*Microbiological* was a *per curiam* decision with each panel member writing separately.  Judge Silberman found the requirements of 5 U.S.C. § 1004(b)(2) to be nonjusticiable, 886 F.2d at 431, Judge Friedman did not specifically address justiciability but concluded that the agency had complied with the statute, *id.* at 424, and Judge Edwards, in dissent, found the relevant FACA sections to be justiciable and would have remanded to the district court, *id.* at 432. Judge Silberman's concurrence in *Microbiological* has been relied upon and cited favorably by numerous courts for its persuasive explanation of why "fairly balanced" claims under FACA are nonjusticiable.  *See Ctr. for Policy Analysis on Trade & Health ("CPATH") v. Office of the U.S. Trade Representative*, 540 F.3d 940, 945 (9th Cir. 2008); *Claybrook*, 111 F.3d at 906 n.4; *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 903 n.2 (D.C. Cir. 1993); *Physicians Comm. for Responsible Med. v. Vilsack*, No. 16 Civ. 00069 (LB), 2016 WL 5930585, at *6 (N.D. Cal. Oct. 12, 2016); *Lorillard, Inc. v. FDA*, 56 F. Supp. 3d 37, 40 n.7 (D.D.C. 2014), *vacated sub nom. R.J. Reynolds*, 810 F.3d 827; *Fertilizer Inst.*, 938 F. Supp. at 54 n.3; *Doe*, 862 F. Supp. at 1430-31; *Pub. Citizen*, 795 F. Supp. at 1218-22; *but see NRDC v. EPA*, 438 F. Supp. 3d 220, 230 (S.D.N.Y. 2020); *NRDC v. DOI*, 410 F. Supp. 3d at 604 (noting that while "admittedly broad, the language of [5 U.S.C. § 1004(b)(2)] does provide a reviewing court with certain standards to apply, even if only in more extreme cases").

21

balanced. *Microbiological*, 886 F.2d at 428 (Silberman, J., concurring). Such a determination would require the Court to make "arbitrary judgments" about "which organizations or individuals qualified as bona fide" representatives of particular policy views. *Id.* at 428-29; *see also Fertilizer Inst.*, 938 F. Supp. at 54 (finding "fair balance" provision nonjusticiable because it would raise "difficult questions" such as, "What qualifications must someone have in order to be deemed an adequate representative of the chemical producers? What if there is a diversity of views among different chemical producers – whose views would then represent the industry?"). Such a task is a manipulable policy choice that is "best left to the other branches of government." *CPATH*, 540 F.3d at 945.[9]

Many courts have thus concluded that "fairly balanced" claims under section 1004(b)(2) of FACA are nonjusticiable. *See id.* (FACA fails to "articulate what perspectives must be considered when determining if the advisory committee is fairly balanced"; the statute, therefore, "provide[s the court] with no meaningful standards to apply"); *Nat'l Parks Conservation Ass'n v. Dep't of Interior*, No. 11 Civ. 578 (FTM) (SPC), 2012 WL 3589804, at *8-9 (M.D. Fla. Apr. 12, 2012), *report and recommendation adopted*, 2012 WL 3590061 (Aug. 20, 2012) ("[T]here is no indication from the provisions of the Organic Act, [or] FACA, that there is a meaningful standard to apply when considering whether the Secretary complied with the 'fairly balanced' requirement imposed by FACA."); *see also Sanchez v. Pena*, 17 F. Supp. 2d 1235, 1238 (D.N.M. 1998) ("[T]he task of creating a 'fair balance' . . . is a political one left to the discretion of the agency by statute and, under the alleged facts of this case, is not a justiciable issue"); *Fertilizer Inst.*, 938 F. Supp.

---

[9] Congress may not confer on the judiciary the power to make policy choices unguided by statutory standards. *Microbiological*, 886 F.2d at 430 n.6 (Silberman, J., concurring); *cf. Metcalf v. Nat'l Petroleum Council*, 553 F.2d 176, 190 (D.C. Cir. 1977) ("[T]o supervise the membership . . . of federal advisory committees on a continual basis and to alter the composition of these committees according to our subjective determinations as to 'fair balance'" would place the court in the "[inappropriate] role as the 'continuing monitors of the wisdom and soundness of Executive action.'") (citation omitted).

at 54 ("For the Court to become entangled in determining what represents a 'fair balance' would require the Court to arbitrarily substitute its judgment for that of the agency. No meaningful standards are available to assist the Court in making such determinations."); *Doe*, 862 F. Supp. at 1430 ("The balance of judicial opinion holds that, by reason of the lack of judicial standards to address alleged 'imbalances' of membership on such committees, Courts will not decide the issue; it is non-justiciable.") (citing, *inter alia*, *Microbiological*, 886 F.2d at 425) (Silberman, J., concurring); *Pub. Citizen*, 795 F. Supp. at 1220-21.

Here, in a case involving religious viewpoints, there are plainly no decisional standards for the Court to apply concerning the appropriate appointment philosophy to follow in establishing a "fairly balanced" advisory committee, nor do Plaintiffs even attempt to propose one. Even if members of the Plaintiff organizations were represented on the RLC, surely there are other religions or faith-based organizations that would not be represented. And given the diversity of viewpoints within any single religion or organization, it is similarly impossible to know whether a given individual is an adequate representative. There is simply no manageable standard for the Court to apply to determine whether the current composition of the RLC violates the fairly balanced provision of the FACA. Accordingly, the authority to interpret and implement these provisions is committed to agency discretion by law under the APA, and the Court lacks subject matter jurisdiction over Plaintiffs' fair balance claims. *See* Fed. R. Civ. P. 12(b)(1).[10]

### B. The Complaint Should be Dismissed for Failure to State a Claim

#### i. Plaintiffs Have Failed to Plead an APA Claim Arising From the Allegedly Unbalanced Membership of the RLC in Count One

Plaintiffs' APA claims alleging that RLC's membership is unbalanced in violation of the FACA should be dismissed under Rule 12(b)(6) because Plaintiffs have failed to allege final

---

[10] For the same reasons, Plaintiffs have also failed to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

agency action—a required element of an APA Claim—and because Plaintiffs have failed to plausibly allege that the RLC's membership is not fairly balanced.

      1.   The "Fairly Balanced" APA Claims Fail to Allege Final Agency Action

To have statutory standing under the APA, Plaintiffs must allege "final agency action." There is no final agency action here because the President alone appointed the RLC members.

The APA provides a right to judicial review to any "person suffering legal wrong because of *agency* action, or adversely affected or aggrieved by *agency* action within the meaning of a relevant statute." 5 U.S.C. § 702 (emphasis added). The right to review is limited to agency action that is: (1) specifically "made reviewable by statute"; or (2) "final agency action for which there is no other adequate remedy in a court." *Id.* § 704. There is no private right of action under the FACA nor any other statute that makes actions of FACA advisory committees subject to judicial review. *See Elec. Priv. Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 37-38 (D.D.C. 2019), *aff'd,* 995 F.3d 993 (D.C. Cir. 2021) (holding that there is no private right of action under the FACA) (citing cases). Accordingly, to state a claim under the APA, Plaintiffs must sufficiently allege "final agency action." *See, e.g.*, *Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008) ("[R]eview under the APA is limited to review of 'final agency action'"); *De La Mota v. Dep't of Educ.*, No. 02 Civ. 4276 (LAP), 2003 WL 21919774, at \*6 (S.D.N.Y. Aug. 12, 2003) ("[T]he APA [] requires that an agency action must be 'final' in order to invoke judicial review.").

The Supreme Court has held that in order for an agency action to be deemed "final," two conditions must be met. First, an agency action is "final" when it "mark[s] the consummation of the agency's decisionmaking process," *i.e.*, when the agency "has rendered its last word on the matter." *Whitman v. American Trucking Ass'ns, Inc.,* 531 U.S. 457, 478 (2001) (citing *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997) (the alleged agency action "must not be of a merely tentative

24

or interlocutory nature")).  Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett,* 520 U.S. at 178 (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71 (1970)); *accord Air Espana v. Brien,* 165 F.3d 148, 152 (2d Cir. 1999).  Even where an agency does not "dress[] its decision with the conventional procedural accoutrements of finality, its own behavior [may still] belie[] the claim that its interpretation is not final."  *Whitman,* 531 U.S. at 479; *United States Gypsum Co. v. Muszynski,* 161 F.Supp.2d 289, 291 (S.D.N.Y.2001).  As such, the finality requirement should be applied in a "'flexible' and 'pragmatic' way," with particular attention given to whether the agency's position is definitive and whether it has a direct and immediate effect.  *De La Mota*, 2003 WL 21919774, at \*6 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149-50 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

In Count One of the Complaint, asserted against only Defendants DOJ and the AG, Plaintiffs allege that "[t]he decision to fail to ensure that the membership of the Commission complies with FACA's requirements constitutes final agency action under the APA."  Compl. ¶ 113.  However, as discussed above, only the President has the authority to appoint or remove the RLC's Commissioners, and the President is not an agency.  *See supra* at 10-11.  Indeed, the Complaint contains no factual allegations that the DOJ or AG took any action, let alone final agency action, with respect to the selection of the RLC members.  Moreover, any suggestion that President Trump allegedly delegated authority to DOJ and the AG to select RLC members should be rejected.  *See id.* ¶¶ 20, 105 (alleging that E.O. 14291 "delegates any functions of the President" under the FACA to the AG, except for those in Section 1005 and 1013 of the Act); Pl. Br. at 9; E.O. 14291 § 2(b)(ix).  The pleadings allege that President Trump selected the RLC members, Compl. ¶ 53, and the E.O. grants no authority to DOJ or the AG, or anyone else, to remove RLC

25

Commissioners or otherwise make changes to the membership of the Commission, *see* E.O. 14291; *see also* 41 C.F.R. § 102-3.130(a) ("[A]dvisory committee members serve at the pleasure of the appointing or inviting authority."); *Removal of Members of the Comm'n on Federal law for the N. Mariana Islands*, 7 Op. O.L.C. 95 (1983) (the presumption is that, unless provided otherwise by legislation, the appointing authority has the power to remove).[11]

Accordingly, Plaintiffs have failed to plead any "final agency action" by the DOJ and AG, and the APA claim in Count One of the Complaint should be dismissed.  *See Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997) (affirming dismissal of APA claim because plaintiff failed to allege that the challenged resolution by a FACA advisory committee was "final agency action"); *Citizens Against Donald Trump Inc. v. Trump*, No. 25 Civ. 311 (SRC), 2026 WL 171774, at *6 (E.D. Mo. Jan. 22, 2026) (dismissing APA claim based on alleged failure to comply with FACA's fairly balanced membership requirement because plaintiff failed to plead "final agency action").

### 2.   Plaintiffs Have Not Alleged that the RLC is Not Fairly Balanced

In addition, Plaintiffs have failed to state a claim under the APA because they have not plausibly alleged that the RLC is not fairly balanced.

Plaintiffs allege that the RLC represents only the "Judeo-Christian" viewpoint because all of its members are all Christian with the exception of one Commissioner who is an Orthodox Jewish rabbi.  Compl. ¶¶ 5, 49-61.  The Complaint further alleges that "[n]o members of the Commission represent other minority religious, such as Islam, Hinduism, or Sikhism, and none of the members on the Commission represent an interfaith organization[.]"  *Id.* ¶¶ 6, 50 ("The Commission's membership is far from fairly balanced because it does not represent religious

---

[11] Indeed, as President Trump announced the RLC Commissioners on May 1, 2025, simultaneously with the issuance of the EO establishing the RLC, *see* E.O. 14291 (May 1, 2025); *Trump Announces RLC Members* (May 1, 2025), it is evident that President Trump had selected the Commissioners prior to any alleged delegation of authority to Defendants DOJ and/or the AG in the EO.

communities aside from Christianity and Judaism."). Plaintiffs seek an Order directing Defendants to employ good faith efforts to "appoint a properly qualified representative from the excluded viewpoints." *Id.* at 40. However, as discussed above, the "FACA does not . . . articulate what perspectives must be considered" in selecting advisory committee members, or how to ensure that those perspectives are fairly balanced. *CPATH*, 540 F.3d at 945; *see also supra* at 18-23. Indeed, "[t]he relevant points of view on issues to be considered by an advisory committee are virtually infinite." *Microbiological*, 886 F.2d at 426.

Plaintiffs allege that each RLC Commissioner's religious affiliation is the metric by which the diversity of viewpoints on the RLC should be evaluated, but there is nothing in the FACA, or in any other law, that requires a balance of viewpoints on that basis. On the contrary, the Executive Order establishing the RLC expressly provides:

> Members of the Commission shall include individuals chosen to serve as educated *representatives of various sectors of society*, including the private sector, employers, educational institutions, religious communities, and States, to offer diverse perspective on how the Federal Government can defend religious liberty for all Americans."

E.O. 14291 § 2(b)(i) (emphasis added). The EO makes clear that the RLC should reflect a diversity of perspectives from "various sectors of society," not simply from adherents of different religions. *Id.* The RLC achieves this balance. As alleged, the RLC Commissioners include members from the private sector, *see* Compl. ¶ 51 (Allyson Ho is a lawyer in private practice); employers, *id.* (Kelly Shackleford is the President and CEO of the nonprofit First Liberty Institute); educational institutions, *id.* ¶ 51 n.20 (citation to website stating that Robert Barron has taught at two universities); religious communities, *id.* ¶ 51 (Barron is a Catholic Bishop; Franklin Graham is a Christian Pastor; Meir Soloveichik is an Orthodox Jewish Rabbi); and States, *id.* (Dan Patrick is the current Texas Lieutenant Governor). As the RLC membership reflects the diversity of viewpoints specified in the EO establishing the committee, Plaintiffs cannot plausibly allege that

27

the RLC is not fairly balanced. *See Nat'l Anti-Hunger Coal. v. Exec. Comm. Of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071 (D.C. Cir. 1983) (affirming holding that advisory committee comprised almost entirely of major corporation executives complied with the FACA's "fairly balanced requirement" in light of the President's "express intent" stated in the Executive Order establishing the committee that its purpose was to provide federal programs with "expertise" from "leaders in the private sector"); *CPATH*, 540 F.3d at 946 (the "fairly balanced" requirement should be evaluated "in the context of other [applicable] laws") (citing cases).

Moreover, the EO expressly states that the RLC's mandate is to make recommendations to the President on "religious liberty" in America, not on religious diversity or specific religious beliefs. E.O. 14291. Plaintiffs' assumption that religious affiliation is a reliable proxy for a person's viewpoint on religious liberty is not a well-pleaded factual allegation entitled to the presumption of truth on a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level."); *First Nationwide Bank*, 27 F.3d at 771 ("unwarranted deductions of fact" need not be accepted as true on a motion to dismiss).

Because Plaintiffs have not, and cannot, allege that the RLC is not fairly balanced in light of its stated purpose in the E.O., they have failed to allege any agency action that is arbitrary, capricious, or contrary to law, and their APA claims should be dismissed. *See Guity v. Martinez*, No. 03 Civ. 6266 (LAP), 2004 WL 1145832, at *8 (S.D.N.Y. May 20, 2004) (dismissing APA claims where defendant "did not violate any applicable statute or the Plaintiffs' []rights").

### ii. Plaintiffs' Document Allegations in Count Three Fail to State an APA Claim

Count Three asserts a claim under the APA against Defendants DOJ and the AG based on an alleged violation of the FACA's requirement to make publicly available certain records. *See* Compl. ¶¶ 125-130. The gravamen of Plaintiffs' claim is that Defendants DOJ and the AG failed

28

to release the materials specified in 5 U.S.C. § 1009(b), or else "failed to make these Commission materials available sufficiently far in advance of the public meetings."  *Id.* ¶¶ 128-29.  In other words, Plaintiffs assert that Defendants DOJ and the AG's alleged *inaction* in allegedly failing to release these materials violates the APA.  While "[f]ailures to act are sometimes remediable under the APA," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) (citing 5 U.S.C. § 551(13)), the Supreme Court has clarified that "the only agency action that can be compelled under the APA is action legally *required*," *id.* at 63.  Thus, a claim under the APA alleging agency inaction "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Id.* at 64.  Further, for agency inaction to be considered "final" for purposes of APA relief, the agency must have been "compelled by law to act within a certain time period" and failed to do so.  *See id.* at 65; *Al-Saedi v. Nepal*, No. 25 Civ. 1113 (RDM), 2026 WL 764575, at *4-5 (D.D.C. Mar. 18, 2026) (dismissing APA claim based on defendant's alleged failure to complete administrative processing of plaintiff's visa application because defendant had no legal duty to complete administrative processing "within a specific period of time"); *cf. Fla. Home Builders Ass'n v. Norton*, 496 F. Supp. 2d 1330, 1336 (M.D. Fla. 2007) (plaintiff stated APA claim where agency failed to act "within the five-year deadline established by statute").

Plaintiffs have not alleged, nor could they, that DOJ and the AG were legally required to publicly disclose the RLC's records within any definite time period.  The FACA does not contain any provisions setting deadlines or timeframes for the disclosure of advisory committee materials.  *See* 5 U.S.C. §§ 1001-1014.  While the D.C. Circuit has held in dicta that "whenever practicable," parties should have access to 5 U.S.C. § 1009(b) materials "before or at the meeting at which the materials are used and discussed," *NRDC*, 410 F. Supp. 3d at 599 (emphasis omitted) (citing *Food Chem. News v. HHS*, 980 F.2d 1468, 1469 (D.C. Cir. 1992)), *Food Chem.* did not involve an APA

29

claim and the "whenever practicable" language makes clear that the timeframe for the disclosure of FACA materials set forth in *Food Chem.* is aspirational and not legally required. Thus, the allegation that DOJ and the AG failed to publicly release the RLC's FACA materials "sufficiently far in advance of the public meetings" fails to state a claim under the APA.[12]  *See NRDC*, 410 F. Supp. 3d at 599 (concluding plaintiffs "failed to state a claim that Defendants violated FACA by not disseminating materials *prior* to meetings."); *Al-Saedi*, 2026 WL 764575, at *4-5 (dismissing APA claim where defendant had no legal duty to take the action requested by plaintiff "within a specific period of time").

Indeed, Plaintiffs have not plausibly alleged any FACA violations with respect to the timing of the publication of the RLC meeting videos, transcripts, and minutes, as these materials are not available until *after* each meeting. With respect to meeting minutes in particular, the FACA specifies that the chairperson "must certify the accuracy of all minutes of advisory committee meetings . . . within 90 calendar days of the meeting to which they relate." 41 C.F.R. § 102-3.165.[13] And Plaintiffs cannot state an APA claim with respect to RLC's meeting agendas, as agendas were published in the Federal Register in advance of each RLC meeting. *See* Bush Decl. ¶¶ 6-12. In any event, all of the materials required to be disclosed under the FACA are now publicly available well in advance of the next RLC meeting—which will be open to the public—

---

[12] Count Three specifies that it is only asserted against DOJ and the AG. Compl. ¶¶ 125-130. Nevertheless, Count Three contains a conclusory allegation against Bush that she allegedly violated the APA by failing to comply with the FACA's document requirements. *Id.* ¶ 130. A single conclusory allegation does not suffice to state a plausible claim, however, given that Count Three is asserted against DOJ and the AG only and the Complaint contains no factual pleadings relating to Bush with respect to Plaintiffs' document claims. *See Iqbal*, 556 U.S. at 678. However, even if the Complaint could be liberally construed to contain APA document claims against Bush, which it cannot, any such claims should be dismissed for the reasons above, *see supra* at 28-30, and also because Bush is sued in her official capacity as the DFO of the RLC, but "an advisory committee is not an agency subject to the APA . . . ." *Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 177 (D.D.C. 2022).

[13] Even though the 90-day certification window for the February 9, March 16, and April 13, 2026, meetings has not yet expired, certified minutes for those meetings are already posted on the public website ahead of the deadline. *See* Bush Decl. ¶¶ 10-12.

30

at which a working draft of the report will be discussed.  *See id.* ¶¶ 13, 15.  As such, Plaintiffs cannot plausibly claim that any alleged delay in publishing these materials finally determined Plaintiffs' rights or that any "legal consequences will flow" from such alleged delay, and their APA document claims should be dismissed.  *See Manchanda v. Lewis*, No. 21-1088-CV, 2021 WL 5986877, at *6 (2d Cir. Dec. 17, 2021) (interlocutory agency actions "do not constitute final agency actions").

### iii.  Counts Two and Four Should Be Dismissed as Mandamus Relief Is Unavailable

Plaintiffs seek relief against Defendants Trump, the RLC, and Bush through the "drastic and extraordinary" writ of mandamus.  *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004).  However, mandamus is not appropriate here.  A writ of mandamus is a drastic remedy "to be invoked only in extraordinary situations."  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).  Mandamus relief is appropriate only if three requirements are met: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."  *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972).  The party seeking mandamus has the burden of showing "a clear and indisputable" right to its issuance.  *Allied Chem. Corp.*, 449 U.S. at 35.  Even if the plaintiff overcomes all these hurdles, the district court must also consider whether mandamus relief should issue as a matter of its discretion.  *See Cheney*, 542 U.S. at 381.

With respect to the first two factors, Plaintiffs cannot demonstrate that Defendants violated a "clear, nondiscretionary duty" imposed by FACA or that Plaintiffs have a clear right to relief.[14] As indicated above, *see supra* at 3, 18-23, far from establishing a clear, nondiscretionary duty on

---

[14] As all three initial elements of mandamus are mandatory, *see In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005), and plaintiffs have not satisfied the first two elements, this Court need not reach the issue of whether there is an adequate remedy at law.

the part of Defendants, the fair balance provision of the FACA gives Defendants wide discretion on this issue and does not support a finding of a "clear duty" or "clear right to relief."  Moreover, to the extent Plaintiffs still seek any relief as to their claims regarding access to information, for the reasons stated above, *see supra* at 29-30, the FACA does not impose a clear non-discretionary duty to release those materials within any certain time period, nor have Plaintiffs alleged "extraordinary" circumstances sufficient to justify mandamus relief.  *See ACLU v. Trump*, 266 F. Supp. 3d 133, 142 (D.D.C. 2017) (denying preliminary injunction and mandamus relief regarding the FACA's public access requirements where defendants live streamed committee meetings and published notices of meetings).

In any event, because applying the FACA's "fairly balanced" requirement to a presidential advisory committee like the RLC raises serious constitutional concerns, even if Plaintiffs satisfied the mandamus standards—and they do not—this Court should decline to exercise mandamus as a matter of discretion.  The Supreme Court has noted that the application of the FACA to govern the manner in which the President receives advice "present[s] formidable constitutional difficulties."  *Pub. Citizen*, 491 U.S. at 466; *see also Cheney*, 542 U.S. at 385 ("[T]he Executive's constitutional responsibilities and status are factors counseling judicial deference and restraint in the conduct of litigation against it."); *In re Cheney*, 334 F.3d 1096, 1113 (D.C. Cir. 2003) (Randolph, J., dissenting) ("As applied to committees the President establishes to give him advice, FACA has for many years teetered on the edge of constitutionality."), *vacated and remanded,* 542 U.S. 367 (2004); *Nadar v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975) ("To hold that Congress intended to subject meetings of this kind to press scrutiny and public participation with advance notice on formulated agendas, etc., as required by [FACA], would raise the most serious questions under our tripartite form of government as to the congressional power to restrict the

32

effective discharge of the President's business."). Applying the FACA to the RLC established by the President raises identical separation of powers concerns. Thus, any argument to proceed against the RLC, President Trump, or Defendant Bush under the mandamus statute needs to be balanced against the serious constitutional implications of regulating the manner in which the President receives advice; that balance counsels against application of the FACA via mandamus here. *Cheney*, 542 U.S. at 382 ("[S]eparation-of-powers considerations should inform a [court's] evaluation of a mandamus petition involving the President or the Vice President."); *see also In re Cheney*, 406 F.3d at 727 ("Although we do not reach the question whether applying FACA to Presidential committees . . . would be constitutional, separation-of-powers considerations have an important bearing on the proper interpretation of the statute.").

To proceed under a mandamus theory on the basis of Plaintiffs' allegations would have grave consequences for the operation of the Office of the President that should be taken into account. Allowing suits of this nature would mean that a President's attempts to obtain advice and consultation would be frequently interrupted by litigation, frustrating his ability to obtain timely and valuable advice and information. Moreover, the President's use of beneficial advisory groups would be greatly chilled if all that was required to impose the burden of litigation on the government was a complaint that stated that FACA violations occurred. *See Ass'n of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 908-10 (D.C. Cir. 1993) (finding that applying FACA and its disclosure requirements to a task force set up by the President would seriously burden the President's Article II right to confidential communications). Moreover, "[i]t is well established that 'a President's communications and activities encompass a vastly wider range of sensitive material than would be true of any ordinary individual.'" *Cheney*, 542 U.S. at 381 (quoting *United States v. Nixon*, 418 U.S. 683, 715 (1974)).

33

As the Supreme Court explained in *Cheney*, this does not mean that the President is above the law. The point is, rather, that, "the public interest requires that a coequal branch of Government . . . give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Id*. at 382 (citations omitted).  Accordingly, the Court should decline to issue mandamus because Plaintiffs have not established any clear right to relief and also as a matter of discretion.

### iv.  **Plaintiff Raushenbush has Failed to State Any Cognizable Claims**

Raushenbush alleges that he "requested to be appointed" to the RLC and that his application was "constructively denied when he failed to receive a response."  Compl. ¶ 84; *see also id.* ¶ 15; *accord* Raushenbush Decl. ¶¶ 15-16.  However, an individual does not have a personal right to appointment on an advisory committee.  *See Nat'l Anti-Hunger Coal.*, 711 F.2d at 1074 n.2 ("Section 5 [of FACA], to be sure, confers no cognizable personal right to an advisory committee appointment."); *Microbiological*, 886 F.2d at 423, 427 (Silberman, J., and Freidman, J., concurring) (same); *see also* 41 C.F.R. § 102-3.130(a) ("[m]embership terms are at the sole discretion of the appointing or inviting authority" and "committee members serve at the pleasure of" that authority).  Accordingly, Raushenbush's non-selection to the RLC does not give rise to a cause of action under the APA or the Mandamus Act.  *See Young v. EPA*, 106 F.4th 56, 61 (D.C. Cir. 2024) (affirming denial of APA claim brought by scientists who were not selected for advisory committee because, *inter alia*, "there is no right to committee membership"); *Sanchez v. Pena*, 17 F. Supp. 2d 1235, 1237-38 (D.N.M. 1998) (dismissing APA claim predicated on rejection of plaintiffs' applications to advisory committee because "the nominees have no legally-protected

34

interest in [advisory committee] membership"); *but see NRDC*, 410 F. Supp. 3d at 602.[15]

In any event, all of the allegations involving Raushenbush relate to his role as President and CEO of the Interfaith Alliance, and do not plead any facts in support of a personal interest or right. *See* Compl. ¶¶ 84-85 (alleging Raushenbush "requested to be appointed to the Commission so that the Commission would include a viewpoint from the interfaith community"), 96; *accord* Raushenbush Decl. ¶ 15 (attesting that Raushenbush requested appointment to the RLC "to represent the perspective of an organization that advocates for religious pluralism of multiple minority religions"). These allegations relate to the organizational claims of Interfaith Alliance, and do not suffice to state any claims by Raushenbush in his personal capacity. *See Confido Advisors, LLC v. USAA Real Est. Co.*, No. 17 Civ. 5632 (JFK), 2018 WL 4265900, at *4 (S.D.N.Y. Sept. 6, 2018) (dismissing claims brought by plaintiff in his individual capacity where he failed to allege "any distinct injury as an individual"); *Dore v. Wormley*, 690 F. Supp. 2d 176, 186 (S.D.N.Y. 2010) (dismissing claims where alleged injuries were to plaintiff's religious congregation rather than to plaintiff). Accordingly, all claims by Raushenbush should be dismissed. *See* Fed. R. Civ. P. 12(b)(6).[16]

---

[15] *NRDC* is distinguishable and wrongly decided. That case held that an organization has standing to assert APA claims arising from the denial of its nominee's application for membership on an advisory committee, or the denial of a fair adjudication of the application, based on the court's finding that such denial constituted an injury-in-fact. *Id.* at 602. However, the court did not dispute that an individual does not have a right to a seat on an advisory committee. *Id.* Moreover, none of the cases on which the court relied found that an individual can sue to challenge the denial of his or her application to join an advisory committee. *See id.* (citing cases). Indeed, the court does not specify which provision of the FACA defendants allegedly violated by denying plaintiffs' nominee's application, and appears to have conflated the FACA's public access and membership requirements. *See id.* ("Denial of access to representation on an advisory committee can constitute an injury in fact under FACA."). Accordingly, *NRDC* should not be followed.

[16] For the same reasons, Raushenbush lacks standing to bring claims arising from his alleged non-selection to be an RLC Commissioner. *See* Fed. R. Civ. P. 12(b)(1). In addition, if Raushenbush is dismissed from the lawsuit, the Complaint should be dismissed for improper venue. *See id.* 12(b)(3). Plaintiffs allege that venue is proper under 28 U.S.C. § 1391(e) because Raushenbush "resides in this District." Compl. ¶ 25. As Raushenbush's residence is the only alleged basis for venue in this district, if his claims are dismissed Plaintiffs will have failed to meet their burden to establish venue. *See, e.g., Moore v. CIA,* No. 25 Civ. 10751 (LTS), 2026 WL 93866, at *1 (S.D.N.Y. Jan. 12, 2026) (venue improper because plaintiff did not reside in district and there was no other basis for venue); *Valine v. U.S. Dep't of Lab.*, No. 25 Civ. 8260 (LTS), 2025 WL 3274543, at *1 (S.D.N.Y. Oct. 14, 2025) (same).

35

## II.    THE PRELIMINARY INJUNCTION MOTION SHOULD BE DENIED

Plaintiffs' motion for a preliminary injunction should be denied because they have not established a likelihood of success on the merits, they have not shown they will suffer irreparable harm if the motion is denied, and because a preliminary injunction is not in the public interest.

### A.  No Likelihood of Success On the Merits

To demonstrate entitlement to the extraordinary and drastic remedy of a preliminary injunction, a plaintiff must demonstrate a "likelihood of success on the merits." *A.H.*, 985 F.3d at 176.  Here, Plaintiffs are not likely to succeed on the merits because, for the reasons above, all claims should be dismissed based on lack of subject matter jurisdiction and failure to state a claim. Accordingly, Plaintiffs' preliminary injunction motion should be denied.  *See, e.g.*, *Page v. Oath Inc.*, No. 17 Civ. 6990 (LGS), 2018 WL 1474620, at *2 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 797 F. App'x 550 (2d Cir. 2019) (dismissal of underlying claim meant plaintiff could not show likelihood of success on the merits); *Leed Indus. Inc. v. NYS Dep't of Lab.*, No. 09 Civ. 9456 (JSR), 2010 WL 882992, at *1 (S.D.N.Y. Mar. 8, 2010) (court's grant of motion to dismiss "rendered moot plaintiff's motion for a preliminary injunction").  Thus, the Court need proceed no further in its analysis of Plaintiffs' motion for a preliminary injunction.

### B.  Plaintiffs Have Not Shown Irreparable Harm

Plaintiffs' motion for a preliminary injunction should also be denied because they have failed to show irreparable harm, the "single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation omitted).  "Irreparable harm is injury that is neither remote nor speculative." *New York v. DHS*, 969 F.3d 42, 86 (2d Cir. 2020).  Such injuries "cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v.*

36

*Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quotation marks omitted).  Accordingly, "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999) (quotation marks omitted).  Plaintiffs have failed to meet this stringent standard as the alleged injuries are remote and speculative, and Plaintiffs delayed for months before seeking relief.

Plaintiffs assert that they have suffered an "informational injury" and that they "urgently" need access to the RLC's records.  Pl. Br. 17-18.  But as discussed above, *see supra* at 12, Plaintiffs have access to all RLC documents and therefore cannot show any harm, let alone irreparable harm.  Moreover, the RLC will hold at least one more meeting and will circulate a draft of its report for public comment at least 15 days in advance of the meeting.  *See* Bush Decl. ¶ 15.  Thus, any "harm that would flow from the failure to disclose additional materials" is "at this time too speculative to warrant injunctive relief." *Lawyers' Comm. for C.R. Under L. v. Presidential Advisory Comm'n on Election Integrity*, 265 F. Supp. 3d 54, 71 (D.D.C. 2017).  Accordingly, Plaintiffs have failed to establish that they will be irreparably harm as to Counts Three and Four.

Next, Plaintiffs argue that they are suffering an "injury stemming from the Commission's lack of fair balance," and that Plaintiffs' "inability to influence the Commission . . . cannot be remedied after the Commission's report is published."  Pl. Br. 18-19 (quotation marks omitted).  This argument also fails to establish irreparable harm.  As an initial matter, Plaintiffs' "unexplained delay in seeking a preliminary injunction is . . . fatal to [their] claim of irreparable harm." *Wang v. Bank of Am. Corp.*, No. 23 Civ. 4508 (VSB), 2025 WL 2611410, at \*4 (S.D.N.Y. Sept. 10, 2025).  The RLC was established on May 1, 2025, and the RLC members were appointed by the President at that time.  *See supra* at 3-5, n.11.  Plaintiffs have thus known about the identities and the RLC members since May 2025, and the Complaint cites to a September 8, 2025, report that

37

Plaintiffs allege suggests President Trump's bias in favor of "Judeo-Christian principles." Compl. ¶ 50. Moreover, the RLC has held seven meetings, beginning in June 2025, yet Plaintiffs waited until February 10, 2026, to file this lawsuit, and then waited another six weeks, until April 2, 2026, to move for preliminary relief. These types of "months-long delays in seeking injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency." *Firestone Art LLC v. Philadelphia Indeminity Ins. Co.*, No. 24 Civ. 3772 (JPC), 2024 WL 2213584, at *1 (S.D.N.Y. May 16, 2024) (internal quotation marks omitted); *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F. Supp. 2d 256, 266 (E.D.N.Y. 2009) ("[C]laim of irreparable harm is undercut by her delay in pursuing a remedy."). Plaintiffs claim that "urgency" is warranted now because the report is close to publication, but this argument misses the mark. By waiting to seek relief regarding the membership of the RLC when the RLC has been in operation for close to one year, the urgency is of Plaintiffs' own making. Plaintiffs cannot now seek to preliminarily enjoin the issuance of a report because they delayed in seeking relief.

Moreover, Plaintiffs cannot establish irreparable harm based on the RLC membership because they will have the ability to comment on a draft of the final report prior to its publication. *See* Bush Decl. ¶ 15. Thus, any alleged harm with respect to the publication of the report is purely speculative. *See Env't Def. Fund, Inc. v. Wright*, 800 F. Supp. 3d 284, 287 (D. Mass. 2025) (no irreparable harm where plaintiffs "submitted comments regarding their concerns about the validity of [the committee] . . . as part of the comment process," even if the comments were not as "fully informed" as they might have been). It is also premature and speculative to assume that any entity or policymaker will rely on the RLC's final report, or to what extent. To establish irreparable harm, Plaintiffs must show the harm is "sufficiently 'certain'" and that the harm would "directly result from the action which the movant seeks to enjoin." *Young v. EPA*, No. CV 21-2623 (TJK),

38

2022 WL 474145, at *4 (D.D.C. Feb. 16, 2022).  Plaintiffs have not shown that any harm is certain here, as it is unknown whether anyone will rely on any findings in the forthcoming report or whether it will have any impact on policies.  *See id.* (finding "connection between the Committee's upcoming meetings and any final EPA rulemaking is too attenuated to warrant preliminary relief").

And in any event, the alleged participatory injury is not irreparable in the absence of a preliminary injunction.  If Plaintiffs ultimately prevail at final judgment, they have asked this Court to "[e]njoin Defendants to attach to any reports or recommendations produced by the Commission a disclaimer stating that the report was produced in violation of FACA's requirement that the Commission's membership be fairly balanced in terms of the points of view represented."  Compl. Prayer for Relief, (e).  Such a disclaimer would be sufficient to alleviate Plaintiffs' concerns about the RLC's membership.  And even if we assume, *arguendo*, that a legislator or policymaker might rely on any report issued by RLC, Plaintiffs could challenge any final agency action that relied on the RLC's report, or could bring suit to vindicate any asserted rights, and having a disclaimer on the report would bolster any claims they may have in such an action.  *Env't Def. Fund*, 800 F. Supp. 3d at 287 (noting that plaintiffs could "challenge any final agency action that relies on the [Report] in the future, once this challenge has been more thoroughly litigated").

Accordingly, Plaintiffs have not established irreparable harm.

## C. A Preliminary Injunction Would Not Serve the Public Interest

The final two factors, balance of equities and the public interest, also weigh in the Defendants' favor.  *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the party opposing a motion for preliminary injunction).  "In determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury

and must consider the effect on each party of the granting or withholding of the requested relief, as well as the consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (internal quotation marks omitted).

As an initial matter, because Plaintiffs cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009). But those factors also tip in Defendants' favor if the Court were to consider them further. The RLC has been meeting for almost one year in an endeavor to fulfill the directives set forth in the E.O., and, pursuant to the E.O., the term of the members appointed to the RLC will expire on July 4, 2026. E.O. 14291 § 2(b)(ii). If the Court enjoins the activities of the RLC or prevents the release of a final report prior to the expiration of the members' terms, it would be costly and inefficient to reconstitute the RLC should the Defendants prevail in the litigation. Moreover, because Plaintiffs have had public access to the RLC meetings and the ability to submit written comments, as well as the ability to submit comments prior to the finalization of any report, Plaintiffs' interests are protected and there is no need for emergency court intervention. *See Lawyers' Comm. for C.R. Under L.*, 265 F. Supp. 3d at 71 (in weighing public interest factors, court found that where the "public may access each meeting and submit written comments" the need for emergency injunctive relief was obviated).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction and dismiss the Complaint in its entirety.[17]

---

[17] In accordance the President's March 11, 2025, memorandum, "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," if the Court enters a preliminary injunction, the government respectfully requests that it require Plaintiffs to post a bond of $10,000. *See* Fed. R. Civ. P. 65(c).

Dated:  New York, New York
       April 28, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: */s/ Dana Walsh Kumar*
DANA WALSH KUMAR
CARLY WEINREB
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2741/2769
Email: dana.walsh.kumar@usdoj.gov
       carly.weinreb@usdoj.gov

41